(No. 19906.—)

Dennis J. Carroll, Defendant in Error, *vs.* Thomas J. Houston *et al.* Plaintiffs in Error

*Opinion filed October 25, 1930—Petition stricken December 5, 1930.*

SAMUEL A. ETTELSON, Corporation Counsel, JAMES W. BREEN, and FRANCIS J. VURPILLAT, for plaintiffs in error.

BENJAMIN C. BACHRACH, for defendant in error.

Mr. COMMISSIONER PARTLOW reported this opinion:

On May 4, 1928, defendant in error, Dennis J. Carroll, filed his petition in the superior court of Cook county against plaintiffs in error, the civil service commissioners of the city of Chicago, for a writ of *certiorari* to review an order of the commission discharging defendant in error as a captain of police of said city upon charges filed against him. On November 2, 1928, the court ordered the writ to issue. The record of the commission was filed on December 3, 1928. A motion was made to quash the writ, and it was overruled. The next day the petition was amended and an order was entered requiring the commission to return a transcript of the evidence taken on the charges. Upon a hearing the court quashed the record of the proceedings on the ground that there was no evidence fairly tending to sustain the charges against defendant in error. An appeal was prosecuted to the Appellate Court, where the judgment was affirmed, and the case comes to this court on a writ of *certiorari*.

Defendant in error became a member of the police department of the city of Chicago on December 12, 1910.

Under civil service rules he was promoted to captain, and on February 25, 1927, he was transferred to 2-A District, commonly known as the Stanton Avenue District, which is bounded on the north by Thirty-first street, on the south by Thirty-ninth street, and extends from the lake to the railroad. On June 29, 1927, charges were filed with the civil service commission by the superintendent of police against defendant in error and notice was served upon him. On July 21, 1927, additional charges were filed. The charges, in substance, were, that he took an active part in politics, in violation of the rules of the department; that he was guilty of conduct unbecoming a police officer; that he neglected his duty; that he was inefficient in the service, and that he willfully maltreated persons under arrest. Under each count there was a specification as to the misconduct charged. The activity in politics consisted in taking part in the mayoralty campaign in 1927. The neglect of duty consisted of permitting houses of prostitution to exist and operate in the district. The maltreatment of persons consisted of raids conducted in the district on March 5, 6 and 7, 1927, in which persons were arrested without warrants and were locked up over Sunday without being booked and without an opportunity to furnish bond. Defendant in error answered the charges and with his counsel attended the trial and submitted evidence. On August 16, 1927, the commission found that he was guilty of conduct unbecoming an officer, that he was guilty of neglect of duty, that he was inefficient in the service, and that he was guilty of maltreatment of persons under arrest. Specific findings were made upon each of these charges substantially in accordance with the specifications. On September 1, 1927, defendant in error filed with the commission what he terms a petition for a rehearing, which in substance recited that if an order of reinstatement were entered the conduct of defendant in error thereafter would be such that his superior officers would have no just cause for complaint. Defendant in er-

ror in his amended petition for *certiorari* alleged that the members of the commission told him to file his petition for a rehearing and it would be considered by the commission at the first available opportunity; that he waited for action upon the petition but it never was acted upon, and that this was the reason his petition for *certiorari* was not filed until May 4, 1928, which was almost nine months after his order of discharge was entered.

Plaintiffs in error insist that the only office of a common law writ of *certiorari* is to certify the record of an inferior tribunal for review; that the court, upon an inspection of the record alone, not including the transcript of the evidence taken on the hearing, determines whether such record establishes the jurisdictional facts pertaining to the person, the subject matter, and the proper legal procedure for removal under section 12 of the Civil Service act; that the judgment of the court will be either that the writ be quashed or that the record be quashed; that when the writ is issued all that is required is that the inferior tribunal certify and return its record of the proceeding, which must recite the facts upon which its jurisdiction depends, and that it is only where the jurisdictional facts do not appear of record that the inferior tribunal must certify not only what is technically denominated the record but also such facts or evidence as may be necessary to determine the question as to the jurisdiction of the tribunal.

Under a common law writ of *certiorari* it is not necessary that the evidence be certified or that there be a certificate of facts outside of the record but the trial must be upon the record, alone. (*Donahue* v. *County of Will*, 100 Ill. 94; *Chicago and Rock Island Railroad Co.* v. *Whipple*, 22 id. 105.) The court has no power to pass upon the findings and conclusions of the inferior tribunal but it may examine the proceeding to determine whether the inferior tribunal had jurisdiction, and the facts upon which the juris-

diction is founded must appear in the record, which also must show that the inferior tribunal acted upon evidence. If the inferior tribunal had jurisdiction to hear and determine the case and it proceeded legally, the court is powerless to review the order on the ground that the inferior tribunal wrongfully removed the defendant from office. (*People* v. *City of Chicago*, 234 Ill. 416; *Joyce* v. *City of Chicago*, 216 id. 466; *City of Chicago* v. *People*, 210 id. 84; *People* v. *Lindblom*, 182 id. 241; *Wilcox* v. *People*, 90 id. 186.) Ordinarily the question of the sufficiency of the evidence will not be reviewed by the higher court for the reason that the return to the writ contains nothing but the record, but where the question is whether jurisdictional facts were or were not established the record must show facts giving the inferior tribunal jurisdiction, and this evidence may properly be reviewed by the court. *Hahnemann Hospital* v. *Industrial Board*, 282 Ill. 316.

In *Funkhouser* v. *Coffin*, 301 Ill. 257, it was held that the only office which a common law writ of *certiorari* performs is to certify the record from an inferior to a superior tribunal; that the superior tribunal, upon an investigation of the record, alone, when the return is sufficient, determines whether the inferior tribunal had jurisdiction, and that the facts upon which such jurisdiction is founded must appear in the record. It is not necessary to return the evidence or a certificate of facts outside of the record. The trial is upon the record. It is contrary to the practice to form any issue of fact or to hear or consider evidence in relation to the original proceedings as heard on that trial. If the circuit court finds from the record that the inferior tribunal had jurisdiction and did not exceed it and proceeded according to law the writ will be quashed, but if the court finds that the inferior body had no jurisdiction or had exceeded its jurisdiction or had not proceeded according to law it will quash the judgment and proceedings shown by

the return. The record must show facts giving the inferior tribunal jurisdiction and mere conclusions of law are not sufficient. The record must show that the board acted upon evidence, and it must contain the testimony upon which the decision was based in order that the court may determine whether there was any evidence fairly tending to sustain the order. The court had no power to inquire into the discretion exercised by the commission provided it acted within its power. The judgment in the *Funkhouser case* was reversed because the findings of the commission stated no evidence or facts justifying the order but simply found the defendant guilty as charged, which was held to be a mere conclusion and insufficient. There is nothing in the *Funkhouser case* which changes the rule as it has existed in this State for many years.

The findings of the civil service commission in this case are full and complete. They show that specific charges were filed against defendant in error, that he was served with notice, that he appeared, and evidence was heard on the charges, of which he was found guilty. The finding of the commission goes into detail as to when, where and under what circumstances defendant in error was guilty. There was evidence in the record fairly tending to support the charges and that the commission proceeded in due form of law. The trial court was without jurisdiction to review the findings, and it was in error in holding that there was no evidence fairly tending to support the charges.

There is another reason why the judgment will have to be reversed. The charges were filed on June 29, 1927, there was a hearing on August 16, 1927, and the civil service commission made a finding. On September 1, 1927, defendant in error filed what he terms a petition for a rehearing. The document was not a petition for a rehearing but was a mere request to the civil service commission to be reinstated, and the promise was made that if he were reinstated his conduct would be such that his superior offi-

cers would have no just cause for complaint. It was a plea for clemency rather than a petition for a rehearing. This petition was never acted upon by the commission. Defendant in error waited until May 4, 1928, when he filed his petition for *certiorari* in the superior court, and it was not until November 2, 1928, that he procured an order directing the writ to issue. The question as to the time within which a petition for *certiorari* may be filed has been before this court on several occasions. It has been held that where great public detriment or inconvenience is likely to result from interfering with the proceeding of the inferior tribunal the writ should not issue, or if it has been improperly issued it should be quashed when the facts are presented to the court, and it should not issue after six months unless the delay is satisfactorily explained in the petition. (*People* v. *Burdette,* 285 Ill. 48; *Schultheis* v. *City of Chicago,* 240 id. 167; *Clark* v. *City of Chicago,* 233 id. 113; *Blake* v. *Lindblom,* 225 id. 555; *City of Chicago* v. *Condell,* 224 id. 595.) In *People* v. *Burdette, supra,* it was said: "There was nothing stated in this petition showing why the petition was not filed within six months. We see no escape, under the above authorities, from holding that the relator was guilty of *laches* in not filing his petition within six months after his discharge. Furthermore, we do not see why defendant in error did not, after his petition was filed, push the hearing to a speedy decision. The petition was filed in the circuit court on March 25, 1915, the return was filed May 18, 1915, and the final order was not entered quashing the proceedings by the State Civil Service Commission until July 28, 1916, over fourteen months after the filing of said return. The authorities seem to hold that the common law writ of *certiorari* may be quashed for failure to prosecute it with diligence even after the return is filed. (6 Cyc. 814; *Parman* v. *School Inspectors,* 49 Mich. 63; *Shepherd* v. *Sliker,* 31 N. J. L. 432; *State* v. *Superior Court,* 46 Wash. 169.) The motion to quash the writ of

*certiorari* was made in the trial court November 25, 1915. Some suggestion has been made as to whether at that late date the trial court could quash the writ. There seems to be no decision in this State on this precise question. The general rule seems to be that the motion to quash the writ may be made and acted upon at any time when the court becomes satisfied that the writ should not have been issued. The dismissal in many of such cases is made by the court of its own motion and without a formal motion of counsel.—4 Ency. of Pl. & Pr. 249; 6 Cyc. 816; 11 Corpus Juris, 188, and cited cases."

The only reason assigned by defendant in error for failing to file his petition for *certiorari* sooner was, as stated in his amended petition for *certiorari,* that he was waiting for the civil service commission to act upon his petition for rehearing. This was not a sufficient excuse, because he could have filed his petition for *certiorari* notwithstanding the fact that the so-called petition for rehearing was pending.

It is insisted that the question of *laches* was not raised in the trial court. The record shows that after the petition for the writ of *certiorari* had been filed a motion was made by plaintiffs in error to quash the return, assigning several reasons therefor, the sixth of which was as follows: "Said return shows on its face that said petitioner is estopped to question the legality of the proceedings of these respondents as set forth in said return." *Laches* consists of such neglect or omission to assert a right as, taken in conjunction with lapse of time more or less great and other circumstances causing prejudice to the other party, operates as a bar. (*Ring* v. *Lawless,* 190 Ill. 520; *Morse* v. *Seibold,* 147 id. 318.) No evidence was offered by defendant in error in support of his excuse as set up in his petition for *certiorari* for not filing his petition sooner. In this condition of the record, under the authorities cited, defendant in error was not entitled to the relief sought.

The judgments of the Appellate Court and the superior court are reversed and the cause remanded, with directions to quash the writ.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*