People of State of Illinois ex rel. William J. Kennedy, Appellee, v. Stephen E. Hurley, Charles A. Lahey and Albert W. Williams, Civil Service Commissioners of City of Chicago, Appellants.

Gen. No. 45,710.

Opinion filed October 28, 1952. Rehearing denied December 9, 1952. Released for publication December 9, 1952.

JOHN J. MORTIMER, Corporation Counsel of City of Chicago, for appellants; L. LOUIS KARTON, Head of Appeals and Review Division, City of Chicago, and ARTHUR MAGID, Assistant Corporation Counsel, City of Chicago, of counsel.

JOHN F. TYRRELL, and EUGENE R. WARD, both of Chicago, for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order entered June 28, 1951 quashing a return to a writ of certiorari and di-

recting the restoration of relator to his position as a police officer of the City of Chicago. The sole basis for the order was that respondents had not returned a transcript of the evidence. That transcript, according to respondents' certification, had been lost in the period of eleven years intervening between the time of the discharge and the trial.

In April 1940 charges were filed with the Civil Service Commission against relator by the Commissioner of Police of the City of Chicago. Specifications and a list of eighteen witnesses were appended. The record shows that all the steps provided for by the Civil Service Act were taken by the Commission. On April 15, 1940, after a hearing, the Commission found in substance that from about May 1, 1938 to November 1, 1938 relator was or purported to be the head of a "Private Property Protective Union," and in that capacity and while in police uniform, he approached certain special private detectives and sought to collect dues, to compel one of them to take over the business of another, and to do other things obnoxious to those private citizens, using threats to obtain his end. Details of names, times and places are set forth in the findings, and it is particularly stated that as to one of those occasions the activities occurred while relator was assigned to police duty, naming the post and district he was supposed to be traveling, and finding that this outside activity was without permission of his superior officer. The Commission directed his discharge from the service.

On August 9, 1940 relator filed a petition for mandamus to compel his reinstatement, and on March 25, 1943, he changed his complaint to a petition for a writ of certiorari. Respondents answered on April 19, 1943. On June 16, 1950 respondents filed a motion to dismiss because of the delay in prosecution. The court overruled that motion. The answer was accordingly

amended. On February 20, 1951 the court ordered the writ to issue. Respondents duly filed their return, which included the record before referred to. Appended to the record was a certificate signed by the three respondents which recited that the return of the record was "* * * true, full and complete * * * except for the transcript of evidence taken at said hearing, *which said transcript has been lost.*" (Italics added.) When the matter came on for hearing the court turned to counsel for relator and inquired whether he wanted to get his man back on the force or was looking for back salary. After this there were numerous dialogues concerning waiver of relator's claim for salary, which finally wound up on an inconclusive note. This phase of the matter will be further considered in our discussion of the question of laches. Without further hearing on any of the other points involved, the order quashing the return was entered June 28, 1951.

The first question presented is whether failure to produce the transcript of evidence upon a return of the writ was fatal to the order of discharge.

Following enactment of the Civil Service Act, a series of decisions definitely limited the power of the courts in cases of this character. *City of Aurora v. Schoeberlein,* 230 Ill. 496; *People v. City of Chicago,* 234 Ill. 416; *McQuade v. City of Joliet,* 293 Ill. 515; *Hopkins v. Ames,* 344 Ill. 527; *Schlau v. City of Chicago,* 170 Ill. App. 19; *Johaaski v. City of Chicago,* 274 Ill. App. 423; and *Drury v. Hurley,* 339 Ill. App. 33. These decisions hold that the Civil Service Commission is part of the executive department of government and that the administration of a police department is an executive Act; that there is no title or property in a public office; and that, therefore, under the separation of powers provision of article 3 of the Illinois Constitution, the removal of an officer is not judicially

reviewable. In the earliest case on this question, *City of Aurora v. Schoeberlein, supra,* the court made a clear distinction between that class of cases affecting the employment or discharge of employees in civil service, and those cases involving individual or property rights where the court had jurisdiction under some other form of procedure. We discussed the above cases in *Harrison v. Civil Service Commission,* 347 Ill. App. 405.

Shortly after passage of the Civil Service Act, efforts were made through certiorari proceedings to induce courts to review civil service proceedings. In one of the earliest cases in which certiorari was sought for the review of civil service proceedings, *People v. Lindblom,* 182 Ill. 241, the court held that certiorari applied, but that the only question which could be considered on such review was whether the Civil Service Commission had jurisdiction and had followed the form of proceedings legally applicable. Not until the case of *Funkhouser v. Coffin,* 301 Ill. 257 (1922), was this limitation on review extended. There, plaintiff, after charges had been filed against him, was removed from his position as second deputy superintendent of police. The Commission's findings recited nothing more than that he was "guilty as charged." No specific findings of fact were made. The court said (p. 261):

"It is manifest that the finding that the appellee was guilty as charged is a mere conclusion of law. No fact was stated by which the court was able to see that the conclusion was true. 'A *quasi* judicial tribunal of inferior jurisdiction must recite the facts, or preserve the facts themselves, upon which its jurisdiction depends.' (*Troxell v. Dick,* 216 Ill. 98.) 'But the recital that due notice was given is not sufficient in a case of this kind. * * * Such recital is a mere conclusion of law. Facts must be stated from which the court is

269

able to see that this conclusion is true.' (*Highway Comrs. v. Smith,* 217 Ill. 250.)' '

The *Funkhouser* case was construed in the same year in *Cord v. Coffin,* 226 Ill. App. 326 (1922). There, the Commission's finding was similar to that in the *Funkhouser* case, that is, ''guilty as charged.'' In construing the *Funkhouser* case, the court held that the proper method to pursue was to have *the record recite the particular facts which the Commission found and which it considered constituted a cause for removal.*

Following this, in a number of cases the Appellate Court held that it was sufficient if the findings of the Commission were specific and not in the general language of the finding in the *Funkhouser* case. *Buttimer v. Geary,* 229 Ill. App. 524 (1923) ; *People ex rel. Holland v. Finn,* 247 Ill. App. 53 (1927) ; and *Murphy v. Houston,* 250 Ill. App. 385 (1928). In the *Buttimer* case, *supra,* the trial court, for alleged informality, struck the transcript of the evidence which had been returned. The court, after holding that a trial such as this was not a common law or criminal proceeding but an investigation, in which the formality required in actions at law was not essential, said that what was required in a return was a recital of the facts, *or the evidence of them.* In *People ex rel. Holland v. Finn, supra,* so far as appears from the statement of facts, no transcript of the evidence was returned. The court nevertheless held that the finding setting out specific facts established the jurisdiction of the Commission, and cited the *Funkhouser* case as one of the authorities therefor.

In *Carroll v. Houston,* 341 Ill. 531 (1931) (opinion by Commissioner Partlow) relied on by both parties in the instant case, the trial and appellate courts were reversed and the order of the Commission sustained. In the opinion the following language occurs:

270

"Under a common law writ of *certiorari* it is not necessary that the evidence be certified or that there be a certificate of facts outside of the record but the trial must be upon the record, alone." (p. 534.)

The court further said that where the question is whether jurisdictional facts were or were not established,

"The record must show that the board acted upon the evidence, and it must contain the testimony upon which the decision was based in order that the court may determine whether there was any evidence fairly tending to sustain the order." (p. 536.)

It is this latter language on which an argument is based that the transcript of evidence must be returned. It is difficult to reconcile the two conflicting statements, but it is our opinion that a careful reading reveals that the court meant it would examine the testimony or evidence supporting the Commission's findings, as revealed either in a transcript of the evidence *or* by the Commission's findings, it being essential that the order recite the facts upon which the conclusion was based.

If there is any doubt about this, the case of *Hopkins v. Ames,* 344 Ill. 527, decided in June 1931, not long after the *Carroll* decision, is decisive. The trial court had ordered the return of the transcript of evidence, and respondents complied. Thereupon, the court quashed the record of the Commission and respondents took an appeal. The Supreme Court stated in its opinion that there was "no bill of exceptions contained in the transcript of the record." The court reviewed the findings of the Commission, which recited the facts on which its conclusion was based. The court cited *Carroll v. Houston, supra,* as authority for the proposition that it is not necessary that the evidence be

271

certified or that there be a certificate of facts outside the record. The court held it to be sufficient that:

"In the present case the return of the civil service commission shows that specific charges were filed against Hopkins; that he was served with notice; that he appeared in person and by counsel; that evidence was heard on the charges and that he was found guilty thereon." (pp. 531–2.)

The *Hopkins* case then reaffirmed the principle of separation of powers and the constitutional requirement that it be preserved, as first stated in *City of Aurora v. Schoeberlein, supra.*

Following the cases of *Carroll v. Houston, supra,* and *Hopkins v. Ames, supra,* the Appellate Court in a series of cases squarely held it was not necessary to certify the evidence. All that was necessary was a showing that the Commission acted upon evidence and that specific facts were found. *People ex rel. Hanrahan v. Ames,* 277 Ill. App. 312 (1934); *Miles v. City of Chicago,* 288 Ill. App. 622 (1937); *People ex rel. Henderson v. Dunham,* 310 Ill. App. 261 (1941).

In *People ex rel. Henderson v. Dunham,* 310 Ill. App. 261 (Abst. Dec.), the record of the Civil Service Commission showed that charges were filed, notice was served, trial had, and witnesses heard, and that the relator was present and participated in the hearing, precisely the same as in the *Hanrahan* case and as in this case. The trial court insisted on production of the transcript of testimony, to which attorneys for respondents objected. The transcript was produced, but it appears from the opinion that the trial court did not rule on its admissibility. The Appellate Court said on this point:

"However, in certiorari cases involving action of the Civil Service Commission, it has uniformly been held that it is not necessary to certify the evidence and

that the trial court is limited in its consideration to the record alone. The court does not review the evidence.''

However, in *People ex rel. Fosse v. Allman,* 329 Ill. App. 296, and in *Cartan v. Gregory,* 329 Ill. App. 307 (1946), the court seems to have considered the production of the transcript essential. The reasoning of the court in the *Fosse* case was that jurisdiction in the inferior body was not presumed; that jurisdiction must appear of record; and that this issue is determined by a showing of (1) cause, (2) written charges, and (3) an opportunity to the accused to be heard. This latter jurisdictional fact, the court said, required a showing not only of notice, but also of participation in the hearing and the introduction of testimony, and that the only way in which the court could be sure this had been done was by having before it a complete transcript of all the evidence. The court, therefore, found that the return must include the transcript of the testimony. The court did not distinguish any of the cases we have quoted above. It overruled all of them. In the case of *Cartan v. Gregory, supra,* a transcript of the evidence had been returned, and in its opinion the court approved the filing of the transcript as part of the supplemental return. The principal ''jurisdictional'' point was that there was no evidence to support the charges. The court examined the record and found for plaintiffs. It was the court's conclusion that where jurisdictional requirements were not met, the record must include the transcript of testimony. The order of the commission in that case was similar to that in the *Funkhouser* case, ''guilty as charged.'' It is in that respect distinguishable from the instant case.

Aside from its conflict with the preponderance of authority, we cannot concur in the reasoning of the court in the *Fosse* case—that only by a transcript of the evidence can a reviewing court be sure that a hear-

ing has been had. The records of trial courts are submitted to reviewing courts upon orders and documents which are certified by the trial courts. That certification of the trial court is accepted as *bona fide*. If the trial court refuses to make a proper certification, remedy by way of mandamus is afforded. If it makes a false certification, there are certainly adequate remedies both in penal and in civil law. It is not sound doctrine to hold that the only adequate basis for a reviewing court to determine what occurred in the trial tribunal would be by having a reporter take shorthand notes and transcribe the evidence. In fact, such a transcript would not, in itself, be accepted by a reviewing court without certification of the trial court. Moreover, by the interpretation urged by relator, the burden is placed upon respondents to produce the transcript of testimony. Apparently if, through no fault of respondents, it should be lost, the return would be quashed as in this case. No showing whatever was required of relator—that he had any defense or that he was in anywise not guilty of the offenses charged, and in fact, under the rules applicable to certiorari proceedings, that question was irrelevant.

 When we consider that in *City of Aurora v. Schoeberlein, supra,* and subsequent decisions, the Supreme Court firmly stated as a matter of constitutional law that courts could not review decisions of the Civil Service Commission, whose functions were entirely executive, it would appear that the interpretation contended for in this case is so remote from this principle as to be a virtual abandonment of it. The historical derivation of this destruction of a constitutional principle so firmly announced by the courts may now be summarized. In an understandable desire to preserve the Civil Service Act against political encroachment, courts first took jurisdiction by way of certiorari, a writ issuing from a superior to an inferior or quasi-

judicial body. This was done, notwithstanding the fact that the Civil Service Commission had been considered a purely executive body. The purpose of the inquiry, the courts then said, was to determine only whether the Commission had jurisdiction and had proceeded according to law. In certiorari, an inferior body was not presumed to have jurisdiction, but on a return to the writ it had to show by the record that it had such jurisdiction, and evidence was not properly a part of the record. The term "jurisdiction" was, by interpretation, expanded to include the requirement that the Commission's return must show specific facts to support the finding, and that a mere finding of "guilty as charged," without the specification of supporting facts was not sufficient. Then, for good measure, it was said in some cases that there must be evidence fairly tending to support the finding. These cases were followed by decisions holding that the Commission's finding could be supported either by a specification of supporting facts *or* by production of a transcript of the testimony. Finally, we have the order entered by the trial court in the instant case—that there must be a complete transcript of testimony to support the finding, and further, that the burden of providing such transcript is upon respondents, and that certification of its loss does not relieve respondents of that burden. All this was done by a strained expansion of the formal requirement that in certiorari the inferior tribunal must show jurisdiction, that is, that the parties and subject matter are subject to the court's trial and judgment. Thus, the fundamental law of this State separating the powers of government has been tortured into the technical concepts of a certiorari proceeding—a Procrustean operation of major proportions. It is our conclusion that the great preponderance of authority does not support this extraordinary result and that it is not necessary for respondents to return a transcript

275

of the testimony. In arriving at this conclusion, in addition to those cases we have already discussed, we have taken into account the other cases cited by relator. They are all distinguishable. Some involved disputes over pensions and some were appeals from the Industrial Commission and other administrative bodies, in which the distinction made in *City of Aurora v. Schoeberlein, supra,* between administrative tribunals such as the Civil Service Commission and those tribunals which pass upon rights between individuals, applies.

■ The defense of laches or delay in the prosecution of a suit is strongly presented by respondents. Examination of the decisions reveals that the term "laches" is no longer restricted in its application, but now includes delay in the prosecution of a common-law action, and we will so use it.

■■ It was more than eleven years after the filing of suit that this matter was brought to hearing. Relator presents as a reason for this delay the fact that one of the members of the firm of attorneys representing him was in the military service for a portion of that period and for part of the time was Corporation Counsel of the City of Chicago and thus disqualified from representing him. However, throughout the entire period, cases of this kind were being tried by competent attorneys in both the circuit and superior courts of this county and were being reviewed by the Appellate and Supreme Courts of this State. Moreover, it is a matter of which this court can take judicial notice that these cases are placed on special calendars and are not subject to the long delays incidental to prosecution of common-law jury cases. When the matter was presented to the trial court, that court stated that relator could have obtained other attorneys and that there was little excuse for the long delay. The court also stated that he had authority to entertain a plea of laches and then entered into discussions with counsel for relator

concerning waiver of relator's claim for salary if the court should overrule the motion. Relator's attorney did not consent to waive the claim, and it is questionable whether he would have had such authority. *Bergman v. Rhodes*, 334 Ill. 137; *Benevolent Society v. Aid Society*, 283 Ill. 99; *Fessler v. Weiss*, 348 Ill. App. 21. Some discussion was also had with regard to the deduction which would be allowed the city on any such salary claim for income earned by relator during that period. There was no definite commitment in this respect. In any event, this is a matter that cannot be properly considered in this court.

When certiorari proceedings to review decisions of the Civil Service Commission were first commenced, courts were confronted by the fact that there was no legal limitation on such actions. They recognized that it was important that such suits should be instituted and prosecuted with dispatch, and they imposed a judicial rule of a six-month limitation on the filing of suits. In our opinion this was not only because of the prospect that a municipality might become liable in damages, but we think the courts considered the demoralizing effect of long delays on the discipline of an executive branch of the government. Administrations come and go, and to confront an executive after many years with directions to reinstate a discharged employee must present him with great difficulties in the maintenance of morale and discipline. This would be particularly true where the reason for reinstatement is purely technical, as in the instant case.

██ It is argued by relator that the limitation placed by courts relates only to institution of suit, and that no such rule can be applied to delay in the prosecution of a suit. This is not correct. In *People v. Burdette*, 285 Ill. 48, the court held that while plaintiff was guilty of laches in not filing his petition within six months after his discharge, it did not see

277

" * * * why defendant in error did not, after his petition was filed, push the hearing to a speedy decision. * * * The authorities seem to hold that the common law writ of *certiorari* may be quashed for failure to prosecute it with diligence, even after the return is filed." (Citing authorities.) (p. 51.)

This language was quoted with approval in *Carroll v. Houston,* 341 Ill. 531, 537. In *People ex rel. Hanrahan v. Ames,* 277 Ill. App. 312, the court said:

"The fact that the petition for certiorari was not filed until a year and ten months after the order of discharge, *coupled with the delay in prosecuting the writ,* shows such laches as to deprive the trial court of jurisdiction to entertain the proceeding." (p. 317.) (Italics added.)

■ In *Daly v. City of Chicago,* 295 Ill. 276, plaintiff filed a praecipe for suit on March 10, 1914. It was never served, and an alias was not issued until August 2, 1918. While the decision turned on the requirement of diligence in the suing out of an alias, the language of the court was broad enough to include laches or negligence in the prosecution of a suit. The court said (p. 283):

"Courts have the inherent power in the interest of justice to dismiss suits for want of prosecution, (14 Cyc. 443; *Sanitary District v. Chapin,* 226 Ill. 499;) * * * ."

■ The return to the writ was sufficient, and the trial court should have quashed the writ upon the return, but failing in this it should have sustained respondents' motion to dismiss on the ground of laches in the prosecution of the suit. Judgment is reversed and the cause is remanded with directions to quash the writ and to dismiss the suit.

*Judgment reversed and cause remanded with directions.*

ROBSON, P. J. and TUOHY, J., concur.