ZELLA F. BAYS *et al.*, Plaintiffs-Appellants, *v.* MARJORIE COX
MATTHEWS *et al.*, Defendants-Appellees.

Fifth District No. 81—389

Opinion filed August 4, 1982.

Caldwell, Troutt, Alexander & Quindry, of Benton, for appellants.

Robert W. Lewis, of Benton, for appellees.

JUSTICE KASSERMAN delivered the opinion of the court:

On January 19, 1979, plaintiffs filed a complaint to quiet title to the mineral estate in certain described real estate located in Franklin County, Illinois. Subsequently, on March 4, 1980, plaintiffs were al-

lowed to amend their complaint to include a second count which sought an order to reconvey the mineral rights to the plaintiffs pursuant to section 255 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 736). On July 2, 1980, the trial court entered an order finding that plaintiffs' action was barred by the equitable doctrine of *laches* and that title to the mineral estate in question was vested in the defendants. From this order plaintiffs appeal.

The evidence adduced at trial indicates that on February 22, 1909, Robert A. Prowell acquired title to the minerals underlying the real estate legally described as "[t]he South half of the Southwest Quarter (SW¼) of the Northeast Quarter (NE¼) of Section One (1), Township Five (5) South, Range Three (3) East of the Third Principal Meridian, IN FRANKLIN COUNTY, ILLINOIS." On May 5, 1959, Robert A. Prowell died intestate, leaving as his sole heirs his children, the plaintiffs, Zella F. Bays, Stella M. Dixon, and Harold Prowell.

The mineral estate was sold on October 23, 1944, for delinquent taxes for the years 1933 to 1943. Included in the abstract of title which was admitted into evidence in the trial court was an affidavit for tax deed. The affiant, Walter W. Williams, stated, *inter alia*, that he was the assignee of Roy Dye who, as agent and trustee for Franklin County, purchased the property at the tax sale. The affidavit also stated that the land was vacant and unoccupied and that an inquiry was made as to the whereabouts of J. H. Prowell, in whose name the land was assessed, and that no one who claimed to own the property could be found. Therefore, according to the affidavit, a notice of the tax sale and purchase was published in the Benton Evening News three times prior to the expiration date for redemption of the property which was October 23, 1946. A copy of this notice was admitted into evidence at trial. The evidence discloses that a tax deed was issued to Walter W. Williams on July 17, 1947.

Mr. Williams died in July 1953, and devised his estate to Mary Lou Williams. On October 26, 1955, Ms. Williams quit claimed her interest in the minerals in question to Aud B. Cox and Dollie M. Cox as joint tenants for the consideration of $500. Both Aud and Dollie Cox died prior to the filing of the instant suit and left as their heirs the defendants, Marjorie M. Cox Matthews, Courtney Cox, Kevin Cox, and Justin Cox.

At trial, held on March 4, 1980, plaintiffs argued that on the previous day they tendered a check for $683.71 which they claimed would fully compensate the defendants for the purchase of the tax deed and subsequent taxes paid by the defendants, including interest at 7% per annum. Plaintiffs urged that, in light of this tender, they were enti-

tled to the mineral estate in the described real estate under section 255 of the Revenue Act of 1939. Plaintiffs further argued that defendants had failed to properly perfect their title in accordance with section 6 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, par. 6) and, therefore, they cannot claim title on a theory of adverse possession.

Defendants replied that under the tax deed issued to Walter W. Williams and the chain of title thereunder, they, as *bona fide* purchasers, are the rightful owners of the mineral estate in dispute. Defendants maintained that the doctrine of *laches* should apply so as to preclude the plaintiffs' claim since defendants have paid taxes on the mineral estate for a considerable period of time without notice of any adverse claim. Defendants also pointed out that they have changed their position in reliance upon their ownership of the mineral estate by executing binding contracts concerning this estate. Defendants further argued that they were entitled to the property under section 7 of the Limitations Act. Ill. Rev. Stat. 1979, ch. 83, par. 7.

The evidence established that the property taxes for the years 1955 through 1976 were paid by the Cox family. Taxes for the years 1977 and 1978 were first paid by the plaintiffs as the heirs of Robert A. Prowell; later, duplicate payments for these years were made by the Cox family.

Earl Tucker, the owner of the surface estate, and Falgar Pearce, a person who lived near the real estate involved, testified for the plaintiffs that no minerals had been removed from the property as yet.

Zella F. Bays, one of the plaintiffs, testified that she believed that plaintiffs, as heirs of Robert A. Prowell, owned the mineral estate. On cross-examination she stated that she saw a notice published in the Benton Evening News in 1961 indicating that the taxes on the property were delinquent but she made no attempt to pay them. This notice was admitted into evidence and made part of the record on appeal. Ms. Bays testified that after she became aware that the property was on the delinquent tax roll, she made no attempt to search the county records for over a decade to determine who was paying the taxes, although she was aware that the property was being taxed.

Harold Prowell also expressed a belief that he and the other heirs of Robert A. Prowell owned the mineral estate but testified that he did not search the county records prior to 1974 or 1975 to learn who was paying the property taxes.

Both Zella F. Bays and Harold Prowell testified that they lived in Benton, Illinois, and that Robert A. Prowell lived there between 1944

and 1947. They stated that when they learned that an option regarding the mineral rights had been granted to the Tennessee Valley Authority sometime in the mid 1970s, they searched the county records and discovered that the tax deed to Walter W. Williams had been issued and the subsequent deed to the Cox family executed. This, Ms. Bays and Mr. Prowell testified, was the first time they had actual notice that someone else was claiming the mineral estate.

According to the testimony of Marjorie M. Cox Matthews and Aud Courtney Cox, two of the defendants, the Cox family have executed various leases covering the oil and gas on the property since 1955 and one such lease was in force at the time of trial. They further stated that the Cox family, as members of the Ewing-Northern Coal Association, executed an option covering the coal on the property in favor of the Tennessee Valley Authority which has been exercised. They testified that prior to March 1977, none of the plaintiffs made any claim of ownership of the mineral estate adverse to the claim of the Cox family.

By stipulation, it was established that on March 3, 1980, plaintiffs' attorneys delivered a check to defendants' attorney in the amount of $683.71, made payable to the order of Marjorie Cox Matthews, Kevin Cox, Courtney Cox and Justin Cox. On March 4, 1980, the date of the trial, the check was returned. Aud Courtney Cox testified that defendants did not accept the check because there was a misnomer on the instrument, the payment was not in cash, and the payment came too late.

The trial court requested trial briefs on the matter and on June 2, 1980, issued the following communication to the attorneys of record:

> "After reading [the] briefs and the cases cited, I find the controlling case to be *Pyle v. Ferrell*, 12 Ill. 2d 547; 147 N.E.2d 341.
>
> In the case at bar, a chancery proceeding, the affirmative defense of Laches is raised by the defendants. The case at bar as in the *Pyle* case, involves only mineral interests, and certainly values of mineral interests have changed greatly in the years from 1947 to 1979 when this suit was begun. All matters, the sale for taxes, application for tax deed, recording such deed, and the payment of taxes for 30 years are matters of record and the plaintiffs and their predecessors in title did have constructive knowledge thereof.
>
> I find present all necessary facts necessary to bar a suit for Laches as set forth in the *Pyle* case, citing from 19 Am. Jur.,

Equity, Sec. 498. The complaint of the plaintiffs is dismissed by reason of such Laches. It is not necessary for the court to pass on other points raised."

On July 2, 1980, the final order was entered in conformance with the above finding.

The first issue raised by the instant appeal is whether the trial court properly applied the doctrine of *laches* to the plaintiffs' claim, which is based upon section 255 of the Revenue Act of 1939.

Plaintiffs argue that the doctrine of *laches* is not available as a defense to a proceeding brought under section 255 of the Revenue Act of 1939 because this is an action at law and *laches* is a defense only to suits in equity. While there are Illinois cases holding that *laches* is a purely equitable defense which is not available as a bar to an action at law (*Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 52, 390 N.E.2d 393, 406; *In re Estate of O'Donnell* (1956), 8 Ill. App. 2d 348, 353, 132 N.E.2d 74, 77), there is authority to the contrary (*Schultheis v. City of Chicago* (1909), 240 Ill. 167, 170, 88 N.E. 563, 563-64; *People ex rel Kennedy v. Hurley* (1952), 348 Ill. App. 265, 276, 108 N.E.2d 808, 813, *cert. denied* (1953), 346 U.S. 817, 98 L. Ed. 344, 74 S. Ct. 29; 1 Ill. L. & Prac. *Actions* sec. 133 (1953)). It would appear that as a general proposition it is true that *laches* is primarily an equitable defense; however, numerous exceptions have been forged by Illinois courts. For example, *laches* has been held to be a valid defense to actions of ejectment (see *Miller v. Siwicki* (1956), 8 Ill. 2d 362, 134 N.E.2d 321; *Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 163 N.E.2d 518), *mandamus, certiorari,* and *quo warranto* (*People ex rel. Casey v. Health & Hospitals Governing Com.* (1977), 69 Ill. 2d 108, 370 N.E.2d 499; *Schultheis v. City of Chicago; People ex rel. Kennedy v. Hurley*), as well as declaratory judgment proceedings (*Villiger v. City of Henry* (1977), 47 Ill. App. 3d 565, 362 N.E.2d 120). We conclude that the doctrine of *laches* is not strictly and unequivocally limited to suits in equity, and we hold that it is available to defendants in the case at bar. Therefore, we must determine whether *laches* is applicable to the instant case. We find that it is.

A very similar factual situation was considered by the Illinois Supreme Court in *Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 147 N.E.2d 341, relied upon by the trial court. In that case, the plaintiff sought to quiet title to a mineral estate and remove as clouds upon his title a tax deed and certain leases made by the holder thereof. The plaintiff acquired title to the mineral estate by devise from his father in 1932 but made no effort to visit the property or pay the taxes or determine

the tax status of the property until 1954 when he was contacted by a geologist who approached him in order to acquire a lease. In the interim, however, the mineral estate had been sold to the defendant in 1936 for delinquent taxes. The defendant received a tax deed, made all subsequent tax payments and subsequently leased the property to third parties. The plaintiff attacked the validity of the tax deed on technical grounds, but the trial court dismissed his complaint under the doctrine of *laches*. The Illinois Supreme Court affirmed the trial court and held that the defense of *laches* was available to the holder of the tax title and that the elements of *laches* were present.

Although the plaintiff's claim in *Pyle* was couched in terms of an equitable suit to quiet title, we believe its reasoning is dispositive of the case at bar. This conclusion is further supported by the fact that the purpose of section 255 of the Revenue Act of 1939 is not to protect the delinquent taxpayer but merely to return real estate to the stream of commerce. (*Shuck v. Guarantee Bank & Trust Co.* (1962), 26 Ill. 2d 123, 129-30, 186 N.E.2d 41, 45.) The application of the doctrine of *laches* to section 255 would not adversely affect the statute's purpose. Additionally, we observe that generally a party who challenges the title to real estate must be diligent in discovering facts which would invalidate the title and in applying for relief. *Miller v. Siwicki* (1956), 8 Ill. 2d 362, 365, 134 N.E.2d 321, 323.

We cannot accept plaintiffs' contention that to allow the doctrine of *laches* to apply to proceedings brought under section 255 of the Revenue Act of 1939 would result in a total bar to recovery of real estate thereunder since this section applies only to tax deeds issued on or prior to September 1, 1951, and, therefore, the time element would dictate that *laches* would apply in every case. This assertion ignores the fact that time alone is not the controlling factor in determining whether the doctrine of *laches* is applicable. *People ex rel. Casey v. Health & Hospitals Governing Com.* (1977), 69 Ill. 2d 108, 114-15, 370 N.E.2d 499, 502.

■ Having concluded that the defense of *laches* is available to the defendants in this case, we must now consider whether the plaintiffs are guilty of *laches*. Plaintiffs apparently contend that the defense of *laches* is not available to defendants under the evidence because section 6 of the Limitations Act requires that defendants must actually possess the mineral estate by undertaking the removal of the minerals from the real etate. Plaintiffs argue that since the evidence establishes that no attempt was made to remove the minerals, defendants cannot claim title. See *Pickens v. Adams* (1955), 7 Ill. 2d 283, 131 N.E.2d 38.

We note at the outset that defendants asserted in the trial court that their claim was based upon section 7 of the Limitations Act, not section 6. However, regardless of which of these sections of the Limitations Act is involved, the possession rule relied upon by the plaintiff is applicable. (*Failoni v. Chicago & North Western Ry. Co.* (1964), 30 Ill. 2d 258, 195 N.E.2d 619; *Payne v. Williams* (1980), 91 Ill. App. 3d 336, 414 N.E.2d 836.) However, we reject plaintiffs' assertion that the failure of defendants to actually possess the minerals in question controls the instant case. Again, our supreme court's decision in *Pyle* is on point. There, as here, the question arose as to whether the tax purchaser took the requisite possession of the mineral estate so as to perfect title under the Limitations Act. The supreme court noted that the trial court did not pass upon this issue but rendered its decision solely upon the doctrine of *laches*; the court then held that the application of this doctrine does not depend upon compliance with the provisions of the Limitations Act but rather depends upon the equities as presented by the circumstances. (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 551-52, 147 N.E.2d 341, 343-44.) The court there stated:

> "What facts will combine to constitute *laches* is to be determined in the light of the circumstances of each case; however, it is pointed out in 19 Am. Jur., Equity, sec. 498, that a suit is held to be barred on the ground of *laches* or stale demand 'where and only where' the following facts are disclosed: (1) Conduct on the part of the defendant giving rise to the situation of which complaint is made and for which the complainant seeks a remedy; (2) delay in asserting the complainant's rights, the complainant having had notice of knowledge of defendant's conduct and the opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit, and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is held not to be barred." (12 Ill. 2d 547, 553, 147 N.E.2d 341, 344.)

The court in *Pyle* then stated that it has long been recognized that "more than ordinary promptness is required of a claimant if the property involved is of a speculative or fluctuating character [citations] and, because oil and mining property is of such a specially precarious nature and is exposed to the utmost fluctuations in value, [the courts] have held there is no class of property in which *laches* is more relentlessly enforced. [Citations.]" *Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 553-54, 147 N.E.2d 341, 343-44.

In weighing the equities in the instant case, we first note that

Walter W. Williams' affidavit for tax deed establishes that as the assignee of the tax sale certificate of purchase, he sought to notify the owners of the property and that he published notice of the expiration of the time of redemption. We note, further, that the trial testimony establishes that at the time the notice was published, Robert A. Prowell, the owner of the mineral rights, lived in Benton. In addition, the tax deed under which defendants claim title was a matter of public record since 1947, yet plaintiffs brought no legal action until 1979, about 30 years later. We find that plaintiffs, like the appellants in *Pyle*, are chargeable with constructive notice of the public records since there is no indication in the record that defendants herein were guilty of any act of deception to prevent suspicion or inquiry. "The test is not what the appellant knows, but what he might have known by the use of the means of information within his reach with the vigilance the law requires of him. [Citations.]" (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 554, 147 N.E.2d 341, 345.) Here, the evidence shows that plaintiffs, although aware that the property was being taxed, totally failed to make any inquiry regarding the property's tax status. One of the plaintiffs, Zella F. Bays, testified that in 1961 she saw a notice published in the newspaper that the property was on the delinquent tax rolls but still made no attempt to search the records. Furthermore, the record indicates that both plaintiffs who testified, Zella F. Bays and Harold Prowell, live in Benton, Illinois, where the county seat is located. Such proximity to the public records is a further indication that plaintiffs failed to exercise ordinary prudence. *Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 554, 147 N.E.2d 341, 345.

We further note that both plaintiffs who testified at trial said that they knew of defendants' adverse claim since the mid-1970's but waited a number of years before filing their lawsuit in 1979. Even more significant is the fact that plaintiffs did not tender the payment required under section 255 of the Revenue Act of 1939 until the day before their suit to quiet title was set for hearing. We conclude that there is evidence that the plaintiffs are chargeable with want of due diligence as required by *Pyle v. Ferrell*.

Finally, in applying the doctrine of *laches*, we may consider the fact that defendants have incurred risks and obligations which would make it inequitable to allow plaintiffs to redeem their land. (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 555, 147 N.E.2d 341, 345.) In this case, as in *Pyle*, the parties claiming under the tax title have entered into an oil and gas lease and have incurred other contractual obligations which would work a hardship upon them if the doctrine of *laches* were not applied.

For the foregoing reasons, we affirm the judgment of the circuit court of Franklin County and stress, as the court did in *Pyle*, that "[o]ur conclusion *** must be considered as being the result of the circumstances peculiar to this case, and not to represent a view that laches of an owner will in all instances serve as a defense to those claiming under tax deeds." *Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 556, 147 N.E.2d 341, 346.

Affirmed.

JONES and HARRISON, JJ., concur.