THE PEOPLE *ex rel.* SALLY A. JACKSON, Director of the Department of Employment Security, Plaintiff-Appellee, v. DEGROOT MOTOR SER-VICES, INC., Defendant-Appellant.

First District (2nd Division)   No. 1—90—2192

Opinion filed November 26, 1991.

Wessels & Pautsch, P.C., of St. Charles (Charles W. Pautsch, of counsel), for appellant.

Roland W. Burris, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Robert G. Toews, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant, DeGroot Motor Services, Inc. (DeGroot), appeals from the circuit court's entry of summary judgment against it in a collection action brought by plaintiff, the People of the State of Illinois for the use of the Director of the Department of Employment Security (Director), pursuant to the Illinois Unemployment Insurance Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 300 *et seq.*). We are asked to decide whether the circuit court erred in determining that the collection action was not time-barred by statute; the doctrine of *laches* should be applied under the circumstances of this case; and DeGroot's due process rights were violated by both the circuit court and the Director. For reasons set forth below, we affirm.

The 11-year history of this case began on April 29, 1980, when the Director of the Department of Labor (Director of Labor)[1] issued a "determination and assessment" (d & a) against DeGroot for overdue unemployment insurance contributions, accrued interest, and penalties, in the sum of $19,194.73, due on earnings from the first quarter of 1976, 1977, 1978, and 1979. The notice informed DeGroot that if a written protest and petition for hearing was not filed by it within 20 days from the date of the notice, the d & a would "become final." The notice was sent by registered mail and was received by DeGroot.

On April 10, 1984, another d & a was issued against DeGroot by the Director of Labor, for $60,750.78, including interest and penalties, covering the period from January 1980 to April 1983. The notice was sent by registered mail and again was received by DeGroot. A timely protest and petition for hearing on this d & a only was submitted by DeGroot in response.

In October 1988, the Director sent DeGroot notice of the protest hearing, scheduled for November 17, 1988. DeGroot later presented a written motion for a continuance, which was granted, and the hearing was reset for December 14, 1988. On December 13, 1988, DeGroot's oral motion for another continuance was denied. DeGroot did not appear at the scheduled December 14 hearing. A report of the Director's representative was filed on December 30, 1988, recommending that the Director's d & a be affirmed. This report was sent to De-

---

[1]The Act formerly was administered by the Director of the Department of Labor. (See Ill. Rev. Stat. 1979, ch. 48, pars. 311, 610.) In December 1984, the Department of Unemployment Security was created, and it currently administers the Act. See Ill. Rev. Stat. 1989, ch. 48, pars. 311, 610.

Groot by certified mail and was received by DeGroot. No timely protest was filed by DeGroot in response to the report, which subsequently became the Director's final decision.

The Director then filed a complaint at law for the collection of DeGroot's delinquent contributions on March 9, 1989. An amended complaint later was filed on May 24, 1989. DeGroot responded with a motion to strike and dismiss, alleging a violation of the statute of limitations and the defense of *laches*. The circuit court denied the motion on October 26, 1989, ruling specifically that *laches* did not attach to the action.

DeGroot thereafter filed an answer in which it admitted both its receipt of the 1980 and 1984 d & as and its failure to protest the 1980 d & a. DeGroot further admitted that it did not file objections with the Director concerning the report of the Director's representative nor did it seek judicial review of the decision. In its affirmative defenses, DeGroot realleged its assertions of violation of the statute of limitations and its defense of *laches*.

The circuit court granted the Director's subsequent motion for summary judgment on June 1, 1990. A judgment of $94,526.73 later was entered against DeGroot on June 26, 1990. By timely notice, DeGroot challenges the circuit court's ruling.

I

DeGroot initially argues that the circuit court erred in determining that the collection action was not time barred under the Act.

■ The legislative scheme at issue in this appeal reveals that the Act was created to prevent the spread of unemployment and to "lighten its burden" upon the unemployed worker and his family. (Ill. Rev. Stat. 1985, ch. 48, par. 300.) The General Assembly, in order to lessen the menace "to the health, safety and morals of the people of Illinois, and to encourage stabilization of employment," mandated unemployment insurance on a statewide scale, providing for the setting aside of "reserves during periods of employment to be used to pay benefits during periods of unemployment." (Ill. Rev. Stat. 1987, ch. 48, par. 300.) Section 2200 of the Act provides that

> "the Director may *** determine and assess the amount of such contributions or deficiency, as the case may be, together with interest and penalties due and unpaid, and immediately serve notice upon such employing unit or person of such determination and assessment and make a demand for payment of the assessed contribution together with interest and penalties thereon. *** Such determination and assessment by the Direc-

tor shall be final at the expiration of 20 days from the date of the service of such written notice thereof and demand for payment, unless such employing unit or person shall have filed with the Director a written protest and a petition for a hearing, specifying its objections thereto. Upon the receipt of such petition within the 20 days allowed, the Director shall fix the time and place for a hearing and shall notify the petitioner thereof. *** At any hearing held as herein provided, the determination and assessment that has been made by the Director shall be prima facie correct and the burden shall be upon the protesting employing unit or person to prove that it is incorrect. Upon the conclusion of such hearing a decision shall be made by the Director either canceling, increasing, modifying or affirming such determination or assessment and notice thereof given to the petitioner." (Ill. Rev. Stat. 1987, ch. 48, par. 680.)

Section 2203 sets forth the manner in which service of process is to be accomplished for hearings held in accordance with section 2200, where such hearings are to be heard, and by whom they are to be conducted. (Ill. Rev. Stat. 1987, ch. 48, par. 683.) The statute is silent as to when the hearing must be convened after a petitioner's request for hearing is received. The Director's decision upon conclusion of such a hearing is "final and conclusive" unless judicial review is sought. (Ill. Rev. Stat. 1987, ch. 48, par. 684.) The circuit court of the county in which the hearing was held is empowered to review the final administrative decision under the provisions of the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.*) and such review has precedence "over all other civil cases except cases arising under the Workers' Compensation Act." Ill. Rev. Stat. 1987, ch. 48, par. 685.

• 3 Section 2206 governs the collection of debts owed under the Act and states in pertinent part that

"[a]ny amount due may *** be collected by civil action against the employing unit or person brought in the name of the People of the State of Illinois, without regard as to whether or not the amount of such contributions has been assessed by the Director as provided in Section 2200." (Ill. Rev. Stat. 1989, ch. 48, par. 686.)

It should be noted that section 2206 does not make a final d & a a prerequisite to the filing of a civil collection suit. Finally, section 2207 sets forth the time limitations which control the legislation:

"No determination and assessment of contributions, interest, or penalties shall be made, and no action for the collection of

contributions, interest, or penalties which is not based upon a final determination and assessment shall be brought against any employing unit, more than four years after the last day of the month immediately following the calendar quarter in which the wages, upon which such contributions accrued, were paid." Ill. Rev. Stat. 1987, ch. 48, par. 687.

■ DeGroot maintains that the instant action to collect delinquent contributions is time barred under section 2207's four-year provision. The statutory language, however, merely bars the issuance of a d & a more than four years after the last day of the month immediately following the calendar quarter in which the wages upon which the contributions accrued were paid. Likewise, no action for collection "which is not based upon a final determination and assessment" (Ill. Rev. Stat. 1987, ch. 48, par. 687) can be brought after the above-quoted passage of time. No limitation period is prescribed for collection actions based upon final d & as. In the case at bar, the d & a became final when DeGroot failed to seek judicial review of the Director's report of December 30, 1988. (See Ill. Rev. Stat. 1987, ch. 48, par. 684.) Since the collection action at issue here clearly was based upon a final d & a, the statutory time limit of four years does not apply.

DeGroot argues that such a construction creates a "loophole" for actions which are based upon a final d & a and suggests that the statutory language of section 2206—that collection suits may be brought "without regard as to whether or not the amount of such contributions has been assessed by the Director as provided in Section 2200" (Ill. Rev. Stat. 1989, ch. 48, par. 686)—carries over to section 2207, thereby making *all* collection actions amenable to its four-year limitation period and resolving this apparent "ambiguity."

DeGroot, however, seeks to create an ambiguity where none exists. Section 2207 simply does not refer to actions based upon a final d & a. Statutory construction requires prime consideration to be given to legislative intent. (*People v. Scott* (1974), 57 Ill. 2d 353, 312 N.E.2d 596.) Statutes must be given their plain and ordinary meaning. (*Maloney v. Bower* (1986), 113 Ill. 2d 473, 498 N.E.2d 1102.) Where the statutory language is clear and unambiguous, the court will not read into the statute exceptions, limitations or conditions. (*People v. Goins* (1988), 119 Ill. 2d 259, 265, 518 N.E.2d 1014; *Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 256 N.E.2d 758.) Furthermore, DeGroot's proffered interpretation would render the legislature's distinction between the two types of collection suits meaningless and

superfluous. See *People v. Singleton* (1984), 103 Ill. 2d 339, 345, 469 N.E.2d 200.

■ DeGroot also argues that the notice and hearing set for its protest of the 1984 d & a was not made within the four-year period established in section 2207. Section 2207, however, does not provide a time limit in which notice must be received and a hearing date set. (See Ill. Rev. Stat. 1987, ch. 48, par. 687.) Section 2203, which governs the type of service mandated for the hearing and sets forth the procedures to be used for such hearings, is also silent as to when these hearings must be held. (See Ill. Rev. Stat. 1987, ch. 48, par. 683.) None of the Act's provisions compel the imposition of a time limitation for a section 2203 hearing in the manner suggested by De-Groot.

Although the statute does not contain any time limitation, the Director's four-year inaction in convening a hearing on DeGroot's protest is troubling and necessitates comment. As noted above, DeGroot filed a timely protest and petition for hearing after receipt of the 1984 d & a; however, notice of the hearing was not sent until October 1988 with the hearing scheduled in November 1988. No reason for this delay is apparent from the record nor was any reason offered on appeal. The administrative process was developed "to bypass the insufferable delays and technicalities of the law." (*Gray v. Gray* (1955), 6 Ill. App. 2d 571, 579, 128 N.E.2d 602.) The Director's delay here belies this intent and depreciates the stated purpose of the Act which she is expressly charged to administer, namely, ensuring that timely contributions to the unemployment insurance fund are made. The continued practice of inexplicable inaction, as here, serves only to diminish the opportunity for meaningful hearings on the issue of delinquency. Future dereliction in this regard may not be condoned.

II

DeGroot alternatively contends that even if this court were to hold that the four-year limitation is inapplicable to the instant collection suit, section 13—205, the Code of Civil Procedure's "catch-all" five-year statute of limitations (Ill. Rev. Stat. 1987, ch. 110, par. 13—205), should be applied to collection suits based upon a final d & a. The five-year limitation of section 13—205 applies to "all civil actions not otherwise provided for." (Ill. Rev. Stat. 1987, ch. 110, par. 13—205.) The Director responds that DeGroot has waived this contention by failing to argue it before the circuit court. Although arguments not made in the circuit court are waived on appeal (134 Ill. 2d R. 341(e)(7)), we shall address the merits of the claim nevertheless.

■ Whether a statute of limitation is applicable to the State requires consideration of the right which the governmental unit seeks to assert, namely, whether it is a right belonging to the general public or whether it belongs only to the government or some small, distinct subsection of the public at large. (*City of Shelbyville v. Shelbyville Restorium, Inc.* (1983), 96 Ill. 2d 457, 451 N.E.2d 874 (*Shelbyville*); *People ex rel. Department of Transportation v. Molter* (1985), 133 Ill. App. 3d 164, 478 N.E.2d 1102.) Three factors must be considered: (1) the effect of the interest on the public; (2) the obligation of the governmental unit to act on behalf of the public; and (3) the extent to which the expenditure of public revenues is necessitated. *Shelbyville*, 96 Ill. 2d at 464-65.

■ Was the instant collection action brought to enforce a right belonging to the general public, or one belonging to the Director or to some small subsection of the public? As noted above, the General Assembly has determined that "unemployment has become a serious menace to the health, safety, morals and welfare of the people *** of Illinois." (Ill. Rev. Stat. 1987, ch. 48, par. 300.) In order to alleviate this problem, the statute mandates employer contributions to a statewide unemployment insurance program. (See Ill. Rev. Stat. 1987, ch. 48, par. 300.) By statute, then, the Director represents the public in administering the Act. (Ill. Rev. Stat. 1987, ch. 48, par. 610.) The instant collection action seeks to enforce the public's claim to the maintenance of statewide unemployment insurance in order to lessen the harm created by unemployment among the statewide work force as a whole. Public revenues necessarily are expended if unemployment is uncurbed. The Director clearly was asserting a public right not subject to the statute of limitation as is contended by DeGroot. The circuit court did not err in rejecting DeGroot's statute of limitations defense.

### III

DeGroot next assigns as error the circuit court's finding that *laches* did not attach to the action. DeGroot's argument centers on the Director's delay in bringing the collection suit and her delay of several years in convening the hearing on DeGroot's written protest.

■ The Director responds that *laches* cannot apply to this case because it is not an equitable action. Although many cases hold that *laches* is a purely equitable defense which is not available as a bar to an action at law (*e.g., Illinois Rockford Corp. v. Dickman* (1988), 167 Ill. App. 3d 113, 520 N.E.2d 1184; *People ex rel. Reeder v. Reeder* (1985), 131 Ill. App. 3d 841, 476 N.E.2d 50; *Mother Earth, Ltd. v.*

*Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 390 N.E.2d 393), there also is authority to the contrary. (See *Bays v. Matthews* (1982), 108 Ill. App. 3d 1112, 440 N.E.2d 142; *People ex rel. Kennedy v. Hurley* (1952), 348 Ill. App. 265, 108 N.E.2d 808.) *Laches* has been held to be a valid defense to actions of ejectment (see *Miller v. Siwicki* (1956), 8 Ill. 2d 362, 134 N.E.2d 321) and actions at law based upon section 255 of the Revenue Act (Ill. Rev. Stat. 1979, ch. 120, par. 736). (*Bays v. Matthews*, 108 Ill. App. 3d 1112, 440 N.E.2d 142.) In *Bays*, the appellate court concluded that since the purpose of section 255 was not the protection of the delinquent taxpayer, but merely the return of real estate to the stream of commerce, the application of the doctrine of *laches* would not affect adversely the statute's purpose. (*Bays v. Matthews*, 108 Ill. App. 3d at 1116-17.) The same cannot be said of the Act at issue here, which provides for financial contributions to an unemployment fund from employers, creating a legal obligation for the employer and lessening the menace to the public at large caused by unemployment. The application of *laches* to the Act could affect adversely this statutory purpose.

■ DeGroot's argument is further weakened by the fact that principles of *laches* and estoppel do not apply to public bodies under usual circumstances. (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 447, 220 N.E.2d 415; *Pavlakos v. Department of Labor* (1984), 128 Ill. App. 3d 783, 793, 471 N.E.2d 547, *aff'd* (1985), 111 Ill. 2d 257, 489 N.E.2d 1325.) Although *laches* may be applied against the State in "compelling circumstances" (*Hickey*, 35 Ill. 2d at 448), mere nonaction of government officers does not give rise to the estoppel. (*Hickey*, 35 Ill. 2d at 448.) There must be some "positive acts" by the officials which may have induced the action of the adverse party, and the doctrine should be invoked only to prevent fraud and injustice. *Hickey*, 35 Ill. 2d at 448-49.

At bar, there were no "positive acts" taken by the Director which would have led DeGroot to believe that the delinquent contributions would not be collected. Timely d & as were filed, placing DeGroot on notice that the contributions, interest and penalties would have to be paid. The lapse of time between DeGroot's protest and the scheduled hearing appears to be government nonaction. Although procrastination of the magnitude shown here is condemnable as noted above, based upon *Hickey*, inaction alone cannot effect an estoppel, particularly in light of the facts of this case, where DeGroot timely received the determinations and assessments, but failed to take any significant steps to avail itself of the statute's review mechanisms, and where no claims of fraud have been advanced.

This conclusion is reinforced by our supreme court's decision in *Todd v. Annunzio* (1951), 410 Ill. 343, 102 N.E.2d 297. There, the court rejected a contention that the Director was estopped from making a d & a against an employer by reason of a delay of almost five years in making the assessments and delays of up to 18 months in convening a hearing upon the employer's protest against the assessment, the court holding that principles of estoppel are inapplicable to the State functioning in a governmental capacity. *Todd v. Annunzio*, 410 Ill. at 348.

The circuit court here correctly found that the doctrine of *laches* did not attach to the instant action.

## IV

DeGroot's final contention is that its due process rights were violated by both the Director and the circuit court, maintaining that the Director's delay in setting the hearing on DeGroot's protest constitutes a deprivation of due process of law.

●■ The essence of due process is notice and the right to be heard. (*Davis v. Lane* (7th Cir. 1987), 814 F.2d 397.) As to notice, the record adequately reflects that the Director met the requirements for notice as set out in the Act. Further, DeGroot ignores the fact that the Director did not deprive it of its right to be heard because the only hearing sought was scheduled. After failing to secure a second continuance, DeGroot neglected to appear at the hearing. Moreover, DeGroot admits that it did not seek judicial review of the report and decision based upon the hearing, even though it had the opportunity to do so under the Act. (See Ill. Rev. Stat. 1987, ch. 48, par. 684.) Upon this record, DeGroot's claim of a due process violation crumbles when it failed to avail itself of any of the hearing protections afforded by statute.

DeGroot also identifies a due process violation arising from the circuit court's denial of its request for discovery.

In her amended complaint, the Director stated that the d & as were obtained in accordance with the provisions of the Act, and further alleged that DeGroot failed to seek judicial review of the decision as is allowed under the Act. In its answer, DeGroot admitted that it did not seek judicial review of the decision, but denied that the decision was final and conclusive. As noted above, the Act makes such a decision final and conclusive upon a party's failure to seek judicial review. Apart from DeGroot's reallegations of the statute of limitations violation and its assertion of the doctrine of *laches*, which previously had been rejected by the court, no issues of fact were created by

DeGroot's answer; therefore, its request for discovery was properly denied. See *People ex rel. Cullerton v. Crawford* (1967), 80 Ill. App. 2d 237, 242-43, 225 N.E.2d 80.

For the foregoing reasons, the judgment of the circuit court must be affirmed.

Affirmed.

SCARIANO, P.J., and DiVITO, J., concur.

