# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Department of Natural Resources v. Waide*, 2013 IL App (5th) 120340

---

| | |
|---|---|
| Appellate Court Caption | THE DEPARTMENT OF NATURAL RESOURCES, Plaintiff-Appellee, v. SHIRLEY A. WAIDE, as Independent Executor of the Estate of Earl Allen, Deceased, CARALEE BIRKESTOL, JENNIFER CLARK, GARY ELLEFSON, PAMELA HAWKINS, GREG LESTER, TOM LESTER, JAMES P. MALLON, JR., JAMES McINTYRE, GARY McWHIRTER, KATHRYN McWHIRTER, CAROLE JEAN MORRISSETTE, SHIRLEY PRESTON, BOB SEARS, DAMON SULLENS, DAVID SULLENS, MARILYN SULLENS, SHARMAINE SWANBERG, SHAWNA LESTER CARNEY, CLIFTON LIMBERT, LYNNE LOVEJOY, MICHAEL P. AND SHIRLEY A. WAIDE, LIVING TRUST DATED JULY 11, 1996, REVISED MARCH 16, 2004, CAROL THOMPSON, MARILYN GIGER, MARY JOHANNA FORBUS, and DANA MOEN, Defendants-Appellants (Jozef Alena, Winifred Basquette, Cindy Briggs, Kathryn Buchman, Patricia Clifford, Karlene Eifolla, Tim Ellefson, Larry Feagler, Nancy Feagler, Debra Grant, Michele Kast, Brian Kittelson, Valeria Klodaski, David Knepper, Anna Mangialardi, Frank Mangialardi, Linda Mischke, Theodore Moen, Scott Morrison, Stephen Morrison, William Morrison, Judy Olsoe, Sandra Jenkins, William Broadbent, Jason Rayburn, Grace Iona Roybal, Teresa Smith, Jack Swicegood, Donald Weaver, Lester E. Weaver, Marlena Weaver, Deep Rock Energy Corporation, and Bi-Petro, Inc., Defendants). |
| District & No. | Fifth District<br>Docket No. 5-12-0340 |
| Filed | July 17, 2013 |

| | |
|---|---|
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly reformed a warranty deed to exclude the grantor's reservation of an undivided one-fourth interest in the mineral rights of the property conveyed to plaintiff, the Department of Natural Resources, since the Department provided clear evidence of a mutual mistake by establishing that the one-fourth interest at issue had been conveyed by the owners in 1939, and the language "except an undivided 1/4 of the oil and gas" included in the deed to the Department was a mistake that referred to the one-fourth interest previously conveyed; furthermore, neither *laches*, *res judicata* nor estoppel by verdict applied. |
| Decision Under Review | Appeal from the Circuit Court of Marion County, No. 08-MR-2; the Hon. J. Marc Kelly, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Evie S. Horn, of Crain, Miller & Wernsman, Ltd., of Centralia, for appellants.<br><br>William L. Broom III and Patricia A. Small, Special Assistant Attorneys General, of Carbondale, and Michael J. Luke, Senior Assistant Attorney General, of Springfield, for appellee. |
| Panel | JUSTICE CATES delivered the judgment of the court, with opinion.<br>Presiding Justice Spomer concurred in the judgment and opinion.<br>Justice Wexstten dissented, with opinion. |

**OPINION**

¶ 1     Plaintiff, the Department of Natural Resources of the State of Illinois (Department), formerly the Department of Conservation, sought reformation of a warranty deed or a declaration that the warranty deed did not reserve an undivided one-fourth interest in the mineral rights of certain property conveyed by the warranty deed. Defendants, the heirs and assignees of the estate of the previous owner of the property, assert collective ownership of the one-fourth interest in the same mineral rights. The circuit court of Marion County

reformed the warranty deed in favor of the Department.

¶ 2    On appeal, defendants argue that the Department did not provide clear evidence of a mutual mistake to warrant reformation of the deed. Defendants further contend that the Department's claim to the property is barred by *laches*, *res judicata*, and estoppel. We affirm.

¶ 3    On July 24, 1933, J.H. Lewis and Margaret Lewis conveyed by quitclaim deed all interest in the property at issue to Charles W. Warren. By a mineral deed dated January 18, 1939, Charles, and his wife Edith, conveyed an undivided one-fourth interest in the mineral rights of the real estate to the Pawnee Royalty Company. The Pawnee Royalty Company was a partnership comprised of B.A. Guinn and W.A. Guinn. Thereafter, the company conveyed an undivided one-half interest in the mineral rights to each of the Guinn partners. In 1961, by way of condemnation, the Department acquired this previously conveyed one-fourth interest from the Guinns, who were then deceased.

¶ 4    On April 17, 1945, Charles Warren died leaving Edith the property with the remaining three-fourths interest in the mineral rights under the real estate. On June 14, 1958, Edith executed an option contract to sell the property to the Department on or before March 31, 1959, for the price of $3,500. The option contract specifically set forth that the sale was for the property and a three-fourths interest in the oil and gas under the surface. The option contract executed by Edith also contained the following handwritten note: "1/4 Royalty sold. Just a notation." Defendants admitted in their response to the Department's request to admit that the contract specified a three-fourths interest in the oil and gas was to be sold to the Department.

¶ 5    The Department exercised its option to purchase the real estate within the time specified by the option contract, but Edith died on April 25, 1959, before completing her obligation to convey her right, title, and interest in the real estate by warranty deed. Margaret Shufeldt, the executor of Edith's estate, filed a petition for leave to complete the option contract with the Department. In her petition, Shufeldt requested the court to authorize her to complete the sale of the real estate and "to sell and convey by a good and sufficient [e]xecutor's deed *all* the right, title[,] and interest of the said *** real estate to the" Department. (Emphasis added.)

¶ 6    The circuit court authorized and directed Shufeldt to execute and deliver to the Department "a good and sufficient deed covering the title to the real estate." On December 27, 1960, Shufeldt executed the warranty deed, which described the real estate as:

"The surface and 3/4 of all oil, gas[,] and other minerals in the Southwest Quarter of the Southwest Quarter of Section 33, Township 4 North, Range 4 East of the Third Principal Meridian; the East Half of the Southeast Quarter of the Southeast Quarter of Section 32, Township 4 North, Range 4 East of the Third Principal Meridian; the Northwest Quarter of the Northeast Quarter of the Northeast Quarter of Section 5, Township 3 North, Range 4 East of the Third Principal Meridian, *except an undivided 1/4 of the oil and gas*, situated in Marion County, Illinois." (Emphasis added.)

It is this emphasized language which ultimately triggered the controversy before us. Defendants claim that such language reserved to the estate an undivided one-fourth interest in the mineral rights of the property which they believe they inherited from Edith's estate.

¶ 7        In June of 1965, Shufeldt filed a final settlement report for the estate. The report, however, did not include any information showing that the estate or any beneficiaries retained an ownership interest in the oil or gas rights. Furthermore, the report did not show that any interest in the real estate was conveyed to anyone other than the Department or the State.

¶ 8        Approximately 40 years later, in 2000 and 2001, Deep Rock Energy Corporation (Deep Rock), a corporation involved in the development, exploration, and production of oil and gas, executed numerous oil and gas leases for the property with defendants, assuming them to be the owners of the undivided one-fourth interest in the oil and gas rights referenced in the 1960 warranty deed. In 2001, Deep Rock also filed with the Department petitions to form special drilling units, sending notice of its petitions to defendants as owners of the mineral rights at issue. Deep Rock's petitions were consolidated for hearing. In the consolidation order, it was determined that Deep Rock had acquired oil and gas leases covering numerous properties and was in the process of securing a lease with the Department as to its interest in the oil and gas underlying the units. The Department granted Deep Rock's special drilling unit petitions, concluding that the special drilling units created would result in the efficient and economical development of the potential formations identified by Deep Rock. Production was underway by 2003.

¶ 9        On June 14, 2005, Deep Rock filed with the Department a petition for unitization that also included the property at issue, as a portion of 3 of 17 parcels of land identified for unitization. Deep Rock attached to the petition a list of "all persons owning or having an interest in the oil and gas rights in the [u]nit [a]rea as of the date of the filing," which included 137 individuals and entities, but did not separately identify the owners of the oil and gas rights for each of the 17 parcels. The Department initially denied the petition on August 14, 2006.

¶ 10       Later in 2006, Deep Rock filed a second petition for unitization with the Department. The petition included the real estate at issue as 3 of 13 parcels of land identified for unitization and identified 59 individuals and entities, including defendants, as owners, but did not separately identify the owners of the oil and gas rights for each of the 13 parcels. In an order entered on August 28, 2006, the Department granted Deep Rock's petition for unitization. The hearing order contained findings of fact which included the legal description of all properties and unit interest holders, including defendants, but did not separately identify the owners of the mineral rights for each of the parcels.

¶ 11       Sometime in December of 2006, the Department was made aware that it was not receiving 100% of the mineral rights for the property at issue. An investigation began, and on July 26, 2007, defendants were notified by Deep Rock that the proceeds from their alleged one-fourth interest in the mineral rights had been suspended because of the Department's claim to the property's mineral rights. Prior to the suspension, defendants, from 2003 to July 2007, had received royalty payments relating to their alleged one-fourth mineral interest in the property. Defendants allegedly also paid taxes on the property during this same time period.

¶ 12       On January 11, 2008, the Department brought its initial complaint for reformation of the

December 27, 1960, warranty deed and for declaratory judgment. In its second amended complaint, the Department asserted that the inclusion of the phrase "except an undivided 1/4 of the oil and gas" in the December 27, 1960, warranty deed was a mutual mistake. The Department sought to have the court reform the deed to delete the phrase "except an undivided 1/4 of the oil and gas" or, in the alternative, to declare that the phrase did not reserve to Edith's estate an undivided one-fourth interest, but instead was merely noting the exception of the previously conveyed one-fourth interest in the oil and gas to avoid the appearance of conveying what was no longer owned.

¶ 13    On February 15, 2008, defendants filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2008)). In their motion, the defendants argued that the Department's requested relief was barred by the doctrine of *laches* because the Department waited 47 years to bring the action for reformation and declaratory judgment. During the proceedings, defendants also alleged *res judicata* and estoppel by verdict as additional affirmative defenses barring the Department's requested relief.

¶ 14    On July 12, 2012, the circuit court entered its order, noting that the case revolved around the phrase "except an undivided 1/4 of the oil and gas," included in the executor's deed that transferred the property to the Department in 1960. The court interpreted Edith's handwritten notation in the option contract, stating "1/4 Royalty sold. Just a notation," as Edith's intent to clarify that she and her husband had previously conveyed one-fourth interest to the mineral rights to the Pawnee Royalty Company. The court found no indications in the option contract that referenced an intent to retain an additional one-fourth interest of the oil and gas rights. The court concluded that the Department "established by clear and convincing evidence that the inclusion of the language 'except an undivided 1/4 of the oil and gas['] was a mutual mistake of both parties."

¶ 15    Having granted the Department's requested relief of reforming the warranty deed, the court did not grant relief based on declaratory judgment. The court further rejected defendants' *laches* defense, finding no compelling circumstances necessitating the application of *laches*. The court rejected defendants' argument that Deep Rock's petitions to form special drilling units and petitions for unitization placed the Department on notice of defendants' claims of mineral interest in the property. The court determined that the petitions covered multiple tracts of land and did not specifically identify defendants' claims of ownership or the ownership of any party to any specific tract. The court also noted that defendants did not begin paying taxes on the royalties from the one-fourth mineral interest until 2003, when production began, and that the first mineral lease signed by any defendant was not until December 2000. Noting that the Department had stipulated that it would not seek recovery of royalties mistakenly paid to defendants, the court further agreed with the Department that defendants would not be harmed if the claim of *laches* were denied. The court concluded that the passage of seven years, from December 2000 until January 2008, when the Department filed suit, was reasonable under the circumstances. Accordingly, the court denied defendants' request for summary judgment against the Department based on the theory of *laches*.

¶ 16    In further rejecting defendants' *res judicata* claim, the court again held that the purpose of the unitization hearings and requirements, as set forth in the Illinois Oil and Gas Act (225

ILCS 725/23.5 (West 2008)), did not require specific findings of specific ownership for each tract but only required that the allocation of unit production to each separately owned tract be fair, reasonable, and equitable to all owners of oil and gas rights in the unit area. The court concluded that there existed no judgment on the merits as to the determination of defendants' ownership interests in the property. Therefore, the Department's requested relief was not barred by *res judicata* or collateral estoppel.

¶ 17    On appeal, defendants argue that the Department did not establish by clear evidence a mutual mistake so as to justify reformation of the 1960 warranty deed. Defendants also continue to argue that the Department's claims are barred by *laches*, *res judicata*, and estoppel by verdict. We disagree. In our opinion, the court correctly granted the Department's requested relief to reform the warranty deed under the circumstances presented here.

¶ 18    In order to be entitled to the equitable relief of reformation of a deed, a plaintiff must prove both a mutual mistake and the existence of an alternate agreement. *Texas Eastern Transmission Corp. v. McCrate*, 76 Ill. App. 3d 828, 831 (1979). Here the evidence reveals that, upon the death of her husband, Edith became the sole owner of the real estate and held a three-fourths interest in the oil and gas under the property. The other one-fourth interest had already been sold by Edith and her late husband in 1939 to the Pawnee Royalty Company. In June of 1958, Edith executed an option contract with the Department to sell the property and the remaining three-fourths interest in the mineral rights. The State exercised its option to purchase the property and mineral rights within the allotted time. Edith died, however, before completing the sale. Shufeldt, as the executor of Edith's estate, petitioned the court to complete the sale conveying *all* rights, title, and interest in the property to the Department. In order to complete the sale as ordered by the court, Shufeldt had a deed prepared. The first part of the deed complied with the terms of the option contract with the Department. After describing the property, the deed also included the language "except an undivided 1/4 of the oil and gas." If this phrase, "except an undivided 1/4 of the oil and gas," was inserted in order to retain a one-fourth interest in Edith's estate, as defendants contend, then Shufeldt failed to obey the order of the court to convey *all* rights, title, and interest in the property to the Department and further perpetrated fraud by conveying less interest than was intended to be sold by Edith and paid for by the Department. If defendants' claims are allowed, Edith's estate would receive a windfall benefit of an interest that Edith had previously conveyed under the option contract. Edith could not convey more than she owned. In accordance with the option contract, and as instructed by the court, the executor conveyed all of Edith's rights in the property. For this reason, the executor did not list any one-fourth interest in the final report, nor did she take any steps to transfer any oil or gas interest to defendants. We therefore conclude that the inclusion of "except an undivided 1/4 of the oil and gas" was a mistake. Clearly it was the intention of both the Department and the executor that Edith's remaining three-fourths interest in the mineral rights under the property be transferred to the Department per the option contract with Edith. The court therefore properly reformed the warranty deed to reflect the parties' intentions.

¶ 19    Defendants argue that the court should have barred the Department's request for relief on the basis of the equitable doctrine of *laches*. *Laches* is an equitable doctrine that will bar relief when, because of a plaintiff's unreasonable delay in asserting a right, the defendant has

been misled or prejudiced or has taken a course different from what he or she would have otherwise taken. *Pyle v. Ferrell*, 12 Ill. 2d 547, 552 (1958); *People ex rel. Hartigan v. Progressive Land Developers, Inc.*, 216 Ill. App. 3d 73, 81 (1991); *People ex rel. Nelson v. Village of Long Grove*, 169 Ill. App. 3d 866, 874-75 (1988). To determine if *laches* is applicable, four factors should be considered: "(1) [c]onduct on the part of the defendant giving rise to the situation of which complaint is made and for which the complainant seeks a remedy; (2) delay in asserting the complainant's rights, the complainant having had notice or knowledge of defendant's conduct and the opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit, and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is held not to be barred." *Pyle*, 12 Ill. 2d at 553; see also *Bays v. Matthews*, 108 Ill. App. 3d 1112, 1118 (1982). "Whether a party has been guilty of *laches* is a question addressed to the sound discretion of the trial court, and the court on review will not disturb the decision of the lower court unless the determination is so clearly wrong as to constitute an abuse of discretion." *Courtois v. Millard*, 174 Ill. App. 3d 716, 722 (1988). We further note that *laches* shall only be applied against a governmental body under compelling circumstances. *Van Milligan v. Board of Fire & Police Commissioners*, 158 Ill. 2d 85, 90 (1994). There are no such compelling circumstances here, and therefore, we find no abuse of the court's discretion in this instance.

¶ 20    Defendants assert that the Department delayed some 48 years in bringing its action for reformation of the 1960 warranty deed. The mere passage of time, however, is not enough for *laches* to apply. *Bays*, 108 Ill. App. 3d at 1117. More importantly, defendants presented no evidence of any activity occurring between the execution of the warranty deed in December 1960 and December 2000 that would have put the Department on notice of defendants' claims of ownership of the disputed mineral interest. The Department believed it had purchased a three-fourths interest in the oil and gas rights from Edith and her estate in 1960 and had acquired through condemnation the Guinns' interest in 1961. At that point, the Department owned 100% of both the surface and mineral rights. There simply was no reason for the Department to believe it had to do anything more to protect its interests in the property.

¶ 21    The first action defendants mention which could have given the Department any notice of defendants' claim to a possible one-fourth interest in the mineral rights of property was the filing of the first mineral lease in December of 2000. Such an action was not sufficient to place the Department on notice, as the Department had no reason to be looking at the mineral interests some 40 years later. Defendants also point to the petitions filed by Deep Rock in July 2001 to form special drilling units covering the property. Such petitions, however, do not establish an unusual, extraordinary, or compelling circumstance warranting application of *laches* against the Department or the State. The first petitions requested the formation of two special drilling units covering some 545 acres, that included multiple tracts of land, with no specific identification of ownership. Such general pleadings were insufficient to cause the Department to be aware of defendants' claimed interest in the property. For example, one of the petitions identified nine parcels of land for the special drilling unit at issue, and only two parts of the real estate involved herein were included

within those nine parcels. This same petition identified 17 individuals or entities, including the State, as owners of interest in the drilling unit. Again, this petition did not separately identify owners for each and every one of the nine parcels identified. Another petition identified 12 parcels of land for the special drilling unit, and only one part of the real estate involved herein was included within those 12 parcels. The petition identified 72 individuals or entities, again including the State, as owners. None of the owners were specifically identified for each parcel of the 12 parcels identified for the drilling unit. The Department was unaware that Deep Rock did not consider the State to own 100% of the mineral interests, especially when the Department was not required to determine the specific owner of the oil and gas rights for each separate tract in a unit area. The failure to make further inquiry is nonaction, which is not sufficient to support a claim of *laches* against a government entity. *City of Chicago v. Alessia*, 348 Ill. App. 3d 218, 229 (2004).

¶ 22 The fact that defendants will lose income from royalty payments also does not constitute an extreme detriment or hardship to justify the application of *laches* in this instance. Defendants were not the owners of the property interest and should not have received the royalty payments in the first place. The loss of a benefit to which they were not entitled is not a compelling circumstance warranting the imposition of *laches*. See *Gersch v. Department of Professional Regulation*, 308 Ill. App. 3d 649, 661 (1999). While defendants may have paid taxes on the royalties received, there is no evidence that the taxes paid were more than the royalty payments received. And, because the State stipulated it would not be seeking to recover any past royalty payments received by individual defendants, there is no prejudice to defendants. Accordingly, we agree that defendants failed to meet their burden to establish the defense of *laches*, and the court correctly denied defendants' request for summary judgment.

¶ 23 We also find that the court correctly denied defendants' request for summary judgment against the Department on the grounds of *res judicata* and estoppel by verdict. *Res judicata* provides that a final judgment on the merits, rendered by a court of competent jurisdiction, is conclusive as to the rights of the parties and their privies to a lawsuit and therefore acts as an absolute bar to a subsequent action between the same parties and their privies involving the same claim, demand, or cause of action. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001). Defendants base their argument concerning *res judicata* on the unitization petitions and hearings given that defendants were identified as the owners of a one-fourth mineral interest in the property. As previously stated, defendants were not specifically and separately identified as the owners of the one-fourth mineral interest now in dispute. The purpose of the unitization hearings was to ensure that the allocation of unit production to each separately owned tract was fair, reasonable, and equitable to all owners of oil and gas rights in the unit area. There were no requirements that any specific findings be made regarding who the specific owners were for each tract of land or their respective interest in each specific tract. Accordingly, there is no judgment on the merits as to defendants' ownership interests in the property. In fact, there has been no previous litigation or determination of ownership with respect to the one-fourth interest claimed by defendants. Defendants failed to carry their burden of proving that *res judicata* applies in this instance, and the court correctly denied their request for summary judgment on this basis as well.

¶ 24 Defendants next claim that the Department's request for relief is also barred by the doctrine of estoppel by verdict or collateral estoppel, again contending that their ownership interests were decided in the unitization hearings. Collateral estoppel precludes a party from relitigating an issue decided in a prior proceeding. *Herzog v. Lexington Township*, 167 Ill. 2d 288, 294-95 (1995). In order for collateral estoppel to apply, there must have been the existence of an identical issue in the prior judgment. In addition, the judgment in the first suit operates as an estoppel only as to the point or question actually litigated, not as to matters which might have been litigated. *Nowak*, 197 Ill. 2d at 390-91. Moreover, the decision on the issue must have been necessary for the judgment in the first litigation, and the person to be bound must have actually litigated the issue in the first suit. *Talarico v. Dunlap*, 177 Ill. 2d 185, 191 (1997). Defendants cannot establish that any issue decided in either of the unitization hearings is identical to the issue here. Ownership of the disputed mineral interest was not an issue determined in either unitization hearing. Again, the unitization hearings involved a number of different parcels of land and a number of different interest holders which were presented in a generalized finding. Defendants' affirmative defense of estoppel by verdict, therefore, also fails. Accordingly, we conclude that the trial court did not err in entering summary judgment for the Department, and against defendants, for reformation of the 1960 warranty deed.

¶ 25 For the aforementioned reasons, we affirm the judgment of the circuit court of Marion County.

¶ 26 Affirmed.

¶ 27 JUSTICE WEXSTTEN, dissenting.

¶ 28 I respectfully dissent and would instead hold that in the context of the extraordinary circumstances here, the basic concepts of right and justice preclude the Department from attacking the transfer of mineral rights in this case. See *Hickey v. Illinois Central R.R. Co.*, 35 Ill. 2d 427, 449 (1966).

¶ 29 "[B]ecause oil and mining property is of such a specially precarious nature and is exposed to the utmost fluctuations in value, [the courts] have held there is no class of property in which *laches* is more relentlessly enforced." *Pyle*, 12 Ill. 2d at 553; *Bays*, 108 Ill. App. 3d at 1118. Pursuant to the plain language of the executor's warranty deed that it accepted in 1960, the Department had clear notice of the defendants' claim to the property 47 years prior to asserting its own ownership. The Department did not file an action while the defendants entered into leases regarding the property, which were of public record, or when the defendants paid taxes on their interest when production began. Even during special drilling and unitization proceedings before it, the Department did not challenge the defendants' acquisition of the subject property. Although the specific tract ownerships were not delineated, in both proceedings, the defendants were identified as owners of the mineral interests. It strains credulity to hold that in determining that "the allocation of unit production to each separately owned tract [was] fair, reasonable, and equitable to all owners of oil and gas rights in the unit area" (225 ILCS 725/23.5 (West 2008)), the Department was not put

on notice regarding the ownership of the mineral interests therein. See *People ex rel. Hartigan*, 216 Ill. App. 3d at 81. The test is not what the Department knew, but what it might have known by the use of the means of information within its reach with the vigilance the law requires of it. *Pyle*, 12 Ill. 2d at 554; *Bays*, 108 Ill. App. 3d at 1119.

¶ 30    During the 47 years the Department remained passive, the defendants incurred risks and obligations that underscore the prejudice the Department's delay caused the defendants. See *Pyle*, 12 Ill. 2d at 555; *Mo v. Hergan*, 2012 IL App (1st) 113179, ¶ 39; *People v. Weiszmann*, 185 Ill. App. 3d 273, 278 (1989); *Bays*, 108 Ill. App. 3d at 1119; see also *Pfister v. Cow Gulch Oil Co.*, 189 F.2d 311, 315 (10th Cir. 1951). The Department's delay further prejudices the defendants in defending the mutual mistake reformation action, in that the Department's delay results in the difficulty of contacting key witnesses involved in the preparation and execution of the warranty deed, in addition to the unreliability of memories of long-past events. See *Pyle*, 12 Ill. 2d at 555; *Dempster v. Rosehill Cemetery Co.*, 206 Ill. 261, 271 (1903); *Smith v. Caterpillar, Inc.*, 338 F.3d 730, 734 (7th Cir. 2003).

¶ 31    Although the law disfavors estoppel against governmental entities, "the reluctance to apply equitable principles against the State does not amount to absolute immunity of the State from *laches* and estoppel under all circumstances." *Hickey*, 35 Ill. 2d at 448; *Louise v. Department of Labor*, 90 Ill. App. 3d 410, 414-15 (1980). *Laches* and estoppel may be applied against the State when, as here, the State acts in a proprietary, as distinguished from its sovereign or governmental, capacity. See *People ex rel. Bernardi v. Leary Construction Co.*, 102 Ill. 2d 295, 301 (1984) ("[a] State's 'proprietary interest' can arise from ownership of a natural resource"); *Stroh v. Blackhawk Holding Corp.*, 48 Ill. 2d 471, 476-77 (1971) ("proprietary rights" have been defined as those conferred by virtue of the ownership, exclusive title, or dominion and implying possession and physical control of a thing). Moreover, the Department officials induced the defendants' actions under circumstances where it would be inequitable to permit the Department to recover. See *Hickey*, 35 Ill. 2d at 448. Here, the Department was an active participant to the execution and receipt of the 1960 deed clearly excepting one-fourth mineral interests to the defendants. The Department further participated and oversaw proceedings wherein the defendants were identified among owners of the drilling unit. The Department participated fully in the hearings on the petitions, which were held before its own Office of Mines and Minerals, and was represented by Robert Mool, the same hearing officer who later discovered the alleged title flaw. To permit so belated a claim to be raised now as to mineral interests regarded for years as securely established promotes confusion and uncertainty in an area where it can be least tolerated. See *Hickey*, 35 Ill. 2d at 449.

-10-