2025 IL App (1st) 242200-U

SIXTH DIVISION
August 15, 2025

No. 1-24-2200

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| *In re* ESTATE OF MARY L. RICHARDSON, Deceased, | ) ) ) | |
| | ) | Appeal from the |
| (SHAMEKA V. RICHARDSON, Independent Administrator, | ) ) | Circuit Court of Cook County |
| | ) | |
| Petitioner-Appellant, | ) | No. 2023 P 005681 |
| | ) | |
| v. | ) | The Honorable |
| | ) | Kent A. Delgado, |
| VAQUITA DAVIS and TARONNA DAVIS, | ) | Judge presiding. |
| | ) | |
| Respondents-Appellees.) | ) | |

PRESIDING JUSTICE TAILOR delivered the judgment of the court.
Justices Hyman and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*: The judgment of the circuit court is affirmed. The trial court properly granted respondents' motion to dismiss based on the doctrine of *laches*.

¶ 2                                     I. BACKGROUND

¶ 3    Mary Richardson and her husband, Perry Richardson Sr., had 10 children together: Linda, Larry, Denise, Donald, Michael, Perry Jr., Kenneth, Willard, Norman, and Jerrod. Perry Sr. passed away, and Mary subsequently died intestate on March 23, 1996. Her son, Michael, passed away

on February 21, 2023, and was survived by his daughters/respondents, Vaquita Davis and Taronna Davis (Respondents).

¶ 4    On August 16, 2023, Linda filed a Petition for Letters of Administration, nominating her daughter, Shameka Richardson, as the proposed independent administrator for Mary's estate. On September 18, 2023, the court appointed Shameka as independent administrator, and the Letters of Office authorized her to take possession of Mary's estate.

¶ 5    On October 11, 2023, Shameka filed a Petition for Issuance of Citation in Recovery and for Other Relief, alleging that at the time of Mary's death, Mary held an interest in the real property located at 1956 S. Springfield Avenue in Chicago, and that "no deed or other transfer document had been recorded transferring title to any other person, so at the time of her death the Real Estate was in her name alone." The Springfield Avenue property was Mary's only purported probate asset. When Linda "began to look into administering the [Springfield Avenue Property] on behalf of [Mary's] estate," she "discovered that *** a Quit Claim Deed was recorded which purportedly quit claimed [Mary's] interest [in the Springfield Avenue Property] from herself to Michael." The deed, which was attached to the petition, shows that it was signed by Mary on June 1, 1995, and recorded with the Cook County Clerk's Office two years later on July 3, 1997, after Mary had died.

¶ 6    The petition alleged a single count – lack of delivery – and claimed that because the quit claim deed was not recorded during Mary's lifetime, there was no presumption of valid delivery. It also claimed that "[u]pon information and belief, during her lifetime, [Mary] made representations to her friends and family that she was the sole owner of the Real Estate and she never made any representations that she transferred her interest in the [Springfield Avenue Property] to Michael." It also alleged that Respondents had been "collecting rent at the [Springfield

2

Avenue Property] which belongs to [Mary's] estate." Shameka asked the court to declare the quit claim deed void and invalid due to inadequate delivery, to compel Respondents to sign documents transferring their interest in the Springfield Avenue Property to Mary's estate, and to prepare an accounting of all rents received since Michael's death.

¶ 7 On March 7, 2024, Respondents filed a motion to dismiss Shameka's petition. They asserted that prior to Mary's death, she executed a quit claim deed conveying her interest in the Springfield Avenue Property to her son, Michael, and that Michael recorded this deed on July 3, 1997. Therefore, they argued that the property did not belong to Mary's estate. Respondents alternatively argued that Shameka's petition should be dismissed under the doctrine of *laches*, because she waited more than 27 years to probate Mary's estate and to assert a claim for title to the Springfield Avenue Property, at which point "the principal witness [Michael] who could testify *** was no longer available to contradict [her]." Respondents argued that the recording of the deed in 1997 provided constructive notice to Shameka that Mary's estate no longer possessed the property, and therefore she failed to act with due diligence by failing to bring suit until 27 years after Mary's death. Respondents also argued that they would suffer prejudice if Shameka was allowed to proceed with her claim, because "the monetary investments and efforts made by Michael and his heirs would unjustly enrich the other heirs of [Mary] to the detriment of the rightful owner." In their reply to Shameka's response, Respondents attached their own affidavits, in which they asserted that their father Michael "made numerous public declarations to various family members that the Springfield Avenue Property was his own property," that he "put in [a] tremendous amount of work and expended significant funds in maintaining the Springfield [Avenue] Property *** because it was his responsibility as the owner" and that he "paid the property taxes, mortgage payments, [and] utility bills for the property." They also attached an

3

affidavit from Roseland Watt, who averred that she lived at the Springfield Avenue Property and that Michael was the owner and her only landlord until he passed away.

¶ 8      Following a hearing on June 18, 2024, the court found that "the recording of the Quit Claim Deed provided notice to the world that Michael Richardson had record title to the property" and granted Respondents' motion to dismiss based on the affirmative defense of *laches.*  It stated that Shameka had an opportunity to assert a claim against the Springfield Avenue Property between July 3, 1997, and February 21, 2023, yet failed to do so. The court also found that it would prejudice Respondents to allow the case to move forward more than 27 years after Mary's death since "6 of 10 of [Mary's] heirs have died since 1997 and are unavailable to testify." It also found that "if the Citation to Recover were to be granted Citation Respondents would suffer harm in that they would lose income and equity in the property and suffer other damages and would be prejudiced by the death of the potential witnesses in the time since the recording of the Quitclaim Deed." In its order, the court expressly noted that the affidavits attached to Respondents' reply were "not being considered by the court because they were not filed with the Motion to Dismiss."

¶ 9      Shameka filed a motion to reconsider, with attached affidavits from her mother Linda and Linda's sister Denise. In these affidavits, Linda and Denise claimed they had a witness, Ricky Richardson, who could testify regarding the "forgery of the Quit Claim Deed." Shameka argued that the trial court erred when it granted Respondents' motion to dismiss based on the doctrine of *laches* because it "did not swear in or examine the petitioner [Shameka] or Respondent Davis before making its findings." Shameka also argued that "[a]lthough the period of time on which laches is predicated normally begins to run either when the plaintiff learns of the facts on which his rights are based or when a reasonable person would acquire such knowledge," Michael owed a "fiduciary duty" towards his sisters and his "failure to disclose certain facts regarding the quit

claim deed" and to inform them that their mother had transferred the property to him at an earlier date excused their lack of diligence.

¶ 10    In their response to Shameka's motion to reconsider, Respondents argued that Shameka was "simply attempting to relitigate the motion to dismiss based on evidence that was available and obtainable to her" at the hearing on the motion to dismiss. They argued that the affidavits attached to the motion to reconsider should be stricken and any new arguments – including Shameka's arguments regarding a fiduciary duty – should not be considered.

¶ 11    On October 8, 2024, the court held a hearing on Shameka's motion to reconsider. First, it addressed Shameka's allegation that the court had denied her an evidentiary hearing, stating that was "just not true." The court pointed out that it had repeatedly asked both parties if they wanted an evidentiary hearing, and both said it was unnecessary and declined to present any witnesses. Next, the court said it would not consider the affidavits filed by Shameka because they contained no newly discovered evidence. Then, after reviewing its notes, the pleadings, and its order, the court found it did not misapply the law and therefore denied Shameka's motion to reconsider. Shameka timely appealed.

¶ 12                                    II. ANALYSIS

¶ 13                              A. Doctrine of *Laches*

¶ 14    Shameka argues that the trial court erred when it dismissed her petition under section 2-619 of the Civil Practice Law based on the doctrine of *laches*.

¶ 15    We review *de novo* the trial court's grant of a section 2-619 motion to dismiss. *Tolbert v. Godinez,* 2020 IL App (4th) 180587, ¶ 18. A motion to dismiss under section 2-619 "admits the legal sufficiency of the complaint, admits all well-pleaded facts and all reasonable inferences therefrom, and asserts an affirmative matter outside the complaint bars or defeats the cause of

action." *Reynolds v. Jimmy John's Enterprises, LLC,* 2013 IL App (4th) 120139, ¶ 31. "One such affirmative matter is the defense of laches." *Richter v. Prairie Farms Dairy, Inc.,* 2016 IL 119518, ¶ 50.

¶ 16    "Laches is an equitable doctrine which precludes the assertion of a claim by a litigant whose unreasonable delay in raising that claim has prejudiced the opposing party." *Tully v. State of Illinois,* 143 Ill. 2d 425, 432 (1991). The doctrine is "grounded in the equitable notion that courts are reluctant to come to the aid of a party who has knowingly slept on his rights to the detriment of the opposing party." *Id.*; *PNC Bank*, *National Association v. Kusmierz,* 2022 IL 126606, ¶ 25 (quoting *Pyle v. Ferrell,* 12 Ill. 2d 547, 552 (1958)) (*laches* is "principally a question of the inequity of permitting the claim to be enforced, an inequity founded upon some change in the condition or relation of the property and parties, and where there is such a change as to make it inequitable to grant relief, it will be refused").

¶ 17    "The mere passage of time, however, is not enough for laches to apply." *Waide v. Department of Natural Resources*, 2013 IL App (5th) 120340, ¶ 20. To defeat a claim based on the defense of *laches*, a defendant must first show a "lack of diligence by the party asserting the claim, [which] encompasses the plaintiff's delay in bringing the action while having notice or knowledge of defendant's conduct and the opportunity to file suit." *Tillman v. Pritzker*, 2021 IL 126387, ¶ 26. A respondent must also show he suffered prejudice as a result of the petitioner's delay in filing the action. *Id*. ¶ 28. "Whether *laches* bars a claim depends on the facts and circumstances of each case" (*Phoenix Capital, LLC v. Nsiah,* 2022 IL App (1st) 220067, ¶ 22), and "[t]he burden is on the defendant to establish *laches* by a preponderance of the evidence." *Osler Institute, Inc. v. Miller,* 2015 IL App (1st) 133899, ¶ 23.

¶ 18    It is undisputed that Shameka did not probate Mary's estate or assert a claim for title to the Springfield Avenue Property until more than 27 years after Mary's death. She argues that she had no reason to bring her claim sooner because she did not know that Mary had purportedly transferred the Springfield Avenue Property to Michael until after his death in 2023. However, if Shameka believed Mary owned the Springfield Avenue Property, it would have been reasonable for her to investigate what happened to the property after Mary's death, not wait 27 years to do so. Moreover, "[t]he test is not what the appellant knows, but what he might have known by the use of the means of information within his reach with the vigilance the law requires of him." *Pyle v. Ferrell*, 12 Ill. 2d at 554. Thus, even if Shameka lacked actual notice that Mary transferred the Springfield Avenue Property to Michael by quit claim deed in 1995, she had constructive notice of the transfer on July 3, 1997, the date that Michael recorded the deed with the Cook County Clerk's Office. See *Almazan v. 7354 Corporation*, 2023 IL App (1st) 220794, ¶ 25 ("Actual notice is the knowledge that the purchaser actually had at the time of the conveyance, and constructive knowledge is knowledge that the law imputes to the purchaser.") By recording the deed, the conveyance became a public record, and Michael put the world, including Shameka, on notice that he was the owner of the Springfield Avenue Property. See *Tillman v. Pritzker,* 2021 IL 126387, ¶ 27 ("It is well established that matters of public record constitute constructive notice to a plaintiff for purposes of applying *laches.*"); *Hachem v. Chicago Title Ins. Co.*, 2015 IL App (1st) 143188, ¶ 27 ("According to the theory of record notice, where an instrument of conveyance *** is recorded in the appropriate public office, the public record provides constructive notice to the whole world."). See also *Pyle v. Ferrell*, 12 Ill. 2d at 554-55 (finding that although appellant claimed to have no notice of matters adverse to his ownership, "public records served as

constructive notice to him" and that absent his "negligence and indifference," he would have discovered the alleged deficiencies he complained of).

¶ 19    Shameka contends that *Department of Natural Resources v. Waide*, 2013 IL App (5th) 120340, supports her position that her delay in filing was not unreasonable. There, Edith Warren became the sole owner of a property after her husband died. *Id*. ¶ 4. She held a 3/4 interest in the oil and gas under the property because she and her husband had already sold the other 1/4 interest to a realty company. *Id*. ¶ 18. In 1958, Edith executed an option contract with the Department of Natural Resources to sell the property and the remaining 3/4 interest in the mineral rights. *Id*. The Department timely exercised its option, but Edith died before the sale was completed. *Id.* The warranty deed, which was executed in 1960, described the real estate as "the surface and 3/4 of all oil, gas *** and other minerals *** except an undivided 1/4 of the oil and gas." *Id*. ¶ 6. Approximately 40 years later, an oil production and development company executed oil and gas leases with Edith's heirs, because it assumed them to be the owners of some of the mineral rights on the property based on the language of the warranty deed. *Id*. ¶ 8. Edith's heirs received royalty payments relating to their alleged 1/4 interest in the property's mineral rights from 2003-2007. *Id.* ¶ 11. In 2008, after learning that it was not receiving 100% of the mineral rights for the property at issue, the Department brought suit against Edith's heirs. *Id.* ¶¶ 11-12. The Department asserted that the defendants had no entitlement to the mineral rights at issue, so it asked the court to reform the deed to remove the phrase "except an undivided 1/4 of the oil and gas." *Id*. ¶ 12. The defendants moved to dismiss based on the doctrine of *laches*, arguing that the Department's claim should be barred because it waited 40-plus years to bring its reformation action. *Id*. ¶ 13. The trial court rejected the *laches* defense and granted the Department's request for reformation of the warranty deed. *Id*. ¶¶ 14-15. On appeal, defendants argued that the trial court erred when it denied their

*laches* defense, but this court disagreed. *Id*. ¶ 17. The court noted that defendants "presented no evidence of any activity occurring between the execution of a warranty deed in December 1960 and December 2000 that would have put the Department on notice of defendants' claims of ownership of the disputed mineral interest" and reasoned that "[t]here was simply no reason for the Department to believe it had to do anything to protect its interests in the property." *Id*. ¶ 20. The court also found no prejudice to defendants to justify the imposition of the *laches* defense because defendants "were not the owners of the property interest and should not have received the royalty payments in the first place. The loss of a benefit to which they were not entitled is not a compelling circumstance warranting the imposition of laches." *Id*. ¶ 22.

¶ 20    *Waide* is critically distinguishable, because the defendants there "presented no evidence *** that would have put the Department on notice of [their] claim of ownership." *Id*. ¶ 20. Here, by contrast, the record reflects that Michael recorded the quit claim deed on July 3, 1997, which provided Shameka with constructive notice of Michael's claim of ownership of the Springfield Avenue Property. Thus, her 27-year delay in challenging the validity of the deed was not reasonable.

¶ 21    Shameka alternatively argues that "[a]lthough the period of time on which laches is predicated normally begins to run either when plaintiff learns of the facts on which his rights are based or when a reasonable person would acquire such knowledge," a different rule applies here because Michael owed a "fiduciary duty" to his sisters, and his failure to tell them that their mother had conveyed the Springfield Avenue Property to him "excused" her failure to use diligence to ascertain these facts. Shameka's argument regarding Michael's fiduciary duty to his sisters was raised for the first time in her motion to reconsider, so we cannot consider it. See *American Chartered Bank v. USMDS, Inc.,* 2013 IL App (3d) 120397, ¶ 13 ("issues raised for the first time in

a motion to reconsider cannot be raised on appeal"). Even if we were to consider it, Shameka's argument would fail. She cites no authority for the proposition that a brother, who is neither an executor nor a trustee, owes a fiduciary duty to his siblings during their mother's lifetime or after her death as beneficiaries of their mother's estate. Further, none of the facts set forth in Shameka's briefs give rise to a fiduciary duty where Michael became owner of the property during their mother's lifetime and did not hold himself out to his siblings as managing the property for their benefit.

¶ 22    Michael recorded the deed to the Springfield Avenue Property in 1997, and this provided Shameka with constructive notice of the conveyance. Because she did not bring suit until 26 years later, we find that she was not diligent in bringing her claim.

¶ 23    Now, we turn to the question of prejudice. Shameka argues that Respondents failed to establish that they suffered any prejudice because they failed to attach any supporting affidavits to their motion to dismiss, and the affidavits attached to their reply could not be considered. Respondents argued in response that they were prejudiced by Shameka's delay, because "the principal witness who could testify against their concoction was no longer available to contradict them."

¶ 24    Although the trial court expressly stated that the affidavits submitted by Respondents "were not being considered by the court because they were not filed with the Motion to Dismiss," Shameka claims "it was impossible for the court to unsee the affidavits after reading them." In their affidavits, Respondents averred that their father Michael "expended significant funds in maintaining the Springfield [Avenue] Property" and "paid the property taxes, mortgage payments, [and] utilities bills."

¶ 25    "A party suffers prejudice in the context of laches where he or she 'incurs risk, enters into obligations, or makes expenditures for improvements or taxes' while the other party remains passive." *PNC Bank, National Association v. Kusmierz*, 2022 IL 126606, ¶ 33 (quoting *Pyle*, 12 Il. 2d at 555). However, a party may also suffer prejudice if critical witnesses are no longer available to testify. See, *e.g., Pyle,* 12 Ill. 2d at 555 (finding that when the appellant waited 15 years to assert himself against a tax title and the grantee of the tax deed died before the cause could be heard, "important evidence on the issue of possession under the tax deed was lost," which pointed to "the inequity of granting relief"); *James v. Frantz*, 21 Ill. 2d 377, 382 (1961) (finding that the combination of appellant's delay in bringing suit and the death of critical witnesses barred the action based on the doctrine of *laches,* reasoning that "[i]f the present attack were permitted," it would "seriously prejudice the appellee in defending against appellant's claim").

¶ 26    Here, the trial court found that if the citation to recover were to be granted, Respondents "would suffer harm in that they would lose income and equity in the property." It also found that it would prejudice Respondents to allow Shameka's case to move forward more than 27 years after Mary's death because "6 of 10 of [Mary's] heirs have died since 1997 and are unavailable to testify." We agree with the latter point. Michael's testimony would have been critical to Respondents' ability to defend against Shameka's claims, because he was the one who received the deed from his mother and recorded it, and there is no dispute that he managed the property after Mary's death in 1996. We find that Respondents would be seriously prejudiced if they were required to defend against Shameka's claim without testimony from their father Michael.

¶ 27    Because Shameka failed to exercise diligence in brining suit against Respondents and the Respondents would suffer prejudice if the suit were allowed to go forward, we find that the trial court properly granted Respondents' motion to dismiss based on *laches.*

¶ 28                              B. Evidentiary Hearing

¶ 29    Shameka also argues that the trial court abused its discretion when it failed to hold an evidentiary hearing before reaching a decision. However, at the October 8, 2024, hearing on Shameka's motion to reconsider, after noting that Shameka claimed in her written pleadings that the court had "prevented an evidentiary hearing," the court said, "that's just not true." It went on:

> On May 13th, after I had received pleadings on the motion to dismiss, I asked Mr. Garcia and Mr. Novak, who represented [Shameka] at the time, were we going to set this for an evidentiary hearing, and I was told by both parties that they did not believe that an evidentiary hearing was necessary; that it was an issue of law for me to decide."

The court noted that on the day of the hearing on the motion to dismiss, it again asked counsel for both parties if they had "any witnesses or evidence" they wanted to present, and they declined. Counsel for Respondents "agree[d]" with the court's recall of these hearings and said the court "did nothing to prevent either party from presenting witnesses." He noted that the witnesses were there and "could have testified themselves, and they chose not to."

¶ 30    In her appellate brief, Shameka argues that the trial court "incorrectly remembered whether the court inquired about an evidentiary hearing." She attached affidavits from her mother Linda and her aunt Denise for support, but because these affidavits are not part of the record, we cannot consider them. See *Kilpatrick v. Baxter Healthcare Corporation,* 2023 IL App (2d) 230088, ¶ 11 ("An appellate court may not consider documents that are not part of the certified record on appeal, and attachments to appellate briefs that are not contained in the certified record on appeal cannot be used to supplement the record and are not properly before a reviewing court. References to evidence outside the record are not permitted and should be stricken.") (Internal citations omitted.) Shameka failed to include transcripts or bystander's reports from the hearings where an evidentiary

hearing was discussed or to point to anything else in the record to support her argument. Because "an appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error" and "[a]ny doubts which may arise from the incompleteness of the record will be resolved against the appellant" (*Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)),  we presume that the trial court's recollection is supported by the record.

¶ 31     Nothing in the record supports Shameka's claim. Therefore, we find that she waived any issue regarding an evidentiary hearing and decline to consider it. *Gallagher v. Lenart*, 226 Ill. 2d 208, 229 (2007) (quoting *Home Insurance Co. v. Cincinnatti Insurance Co,* 213 Ill. 2d 307, 326 (2004) ("[w]aiver arises from an affirmative act, is consensual, and consists of an intentional relinquishment of a known right.").

¶ 32                                     III. CONCLUSION

¶ 33     For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 34     Affirmed.